# FEDERAL DEPOSIT INSURANCE CORPORATION *v.* MEYER

No. 92–741.   Argued October 4, 1993—Decided February 23, 1994

THOMAS, J., delivered the opinion for a unanimous Court.

*Deputy Solicitor General Bender* argued the cause for petitioner.   On the briefs were *Solicitor General Days, Act-*

*ing* Solicitor General *Bryson,* Acting Assistant Attorney General *Schiffer,* James A. *Feldman,* Barbara L. *Herwig,* Jacob M. *Lewis,* Alfred J. T. *Byrne,* Jack D. *Smith,* and Jerome A. *Madden.*

*Gennaro A. Filice III* argued the cause and filed a brief for respondent.*

JUSTICE THOMAS delivered the opinion of the Court.

In *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388 (1971), we implied a cause of action for damages against federal agents who allegedly violated the Constitution. Today we are asked to imply a similar cause of action directly against an agency of the Federal Government. Because the logic of *Bivens* itself does not support such an extension, we decline to take this step.

## I

On April 13, 1982, the California Savings and Loan Commissioner seized Fidelity Savings and Loan Association (Fidelity), a California-chartered thrift institution, and appointed the Federal Savings and Loan Insurance Corporation (FSLIC) to serve as Fidelity's receiver under state law. That same day, the Federal Home Loan Bank Board appointed FSLIC to serve as Fidelity's receiver under federal law. In its capacity as receiver, FSLIC had broad authority to "take such action as may be necessary to put [the thrift] in a sound solvent condition." 48 Stat. 1259, as amended, 12 U. S. C. § 1729(b)(1)(A)(ii) (repealed 1989). Pursuant to its general policy of terminating the employment of a failed thrift's senior management, FSLIC, through its special representative Robert L. Pattullo, terminated respondent John H. Meyer, a senior Fidelity officer.

Approximately one year later, Meyer filed this lawsuit against a number of defendants, including FSLIC and Pat-

---

*\*David W. Graves* and *Gary M. Laturno* filed a brief for the National Employment Lawyers Association as *amicus curiae* urging affirmance.

tullo, in the United States District Court for the Northern District of California. At the time of trial, Meyer's sole claim against FSLIC and Pattullo was that his summary discharge deprived him of a property right (his right to continued employment under California law) without due process of law in violation of the Fifth Amendment. In making this claim, Meyer relied upon *Bivens* v. *Six Unknown Fed. Narcotics Agents, supra,* which implied a cause of action for damages against federal agents who allegedly violated the Fourth Amendment. The jury returned a $130,000 verdict against FSLIC, but found in favor of Pattullo on qualified immunity grounds.

Petitioner Federal Deposit Insurance Corporation (FDIC), FSLIC's statutory successor,[1] appealed to the Court of Appeals for the Ninth Circuit, which affirmed. 944 F. 2d 562 (1991). First, the Court of Appeals determined that the Federal Tort Claims Act (FTCA or Act), 28 U. S. C. §§ 1346(b), 2671–2680, did not provide Meyer's exclusive remedy. 944 F. 2d, at 568–572. Although the FTCA remedy is "exclusive" for all "claims which are cognizable under section 1346(b)," 28 U. S. C. § 2679(a), the Court of Appeals decided that Meyer's claim was not cognizable under § 1346(b). 944 F. 2d, at 567, 572. The court then concluded that the "sue-and-be-sued" clause contained in FSLIC's organic statute, 12 U. S. C. § 1725(c)(4) (repealed 1989), constituted a waiver of sovereign immunity for Meyer's claim and entitled him to maintain an action against the agency. 944 F. 2d, at 566, 572. Finally, on the merits, the court affirmed the jury's conclusion that Meyer had been deprived of due process when he was summarily discharged without notice and a hearing. *Id.,* at 572–575. We granted certiorari to consider

---

[1] See 12 U. S. C. § 1821(d) (1988 ed., Supp. IV). After FSLIC was abolished by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. 101–73, 103 Stat. 183, FDIC was substituted for FSLIC in this suit.

the validity of the damages award against FSLIC.   507 U. S. 983 (1993).[2]

## II

Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.   *Loeffler* v. *Frank*, 486 U. S. 549, 554 (1988); *Federal Housing Administration* v. *Burr*, 309 U. S. 242, 244 (1940).   Sovereign immunity is jurisdictional in nature.   Indeed, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit."   *United States* v. *Sherwood*, 312 U. S. 584, 586 (1941).   See also *United States* v. *Mitchell*, 463 U. S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").   Therefore, we must first decide whether FSLIC's immunity has been waived.

## A

When Congress created FSLIC in 1934, it empowered the agency "[t]o sue and be sued, complain and defend, in any court of competent jurisdiction."   12 U. S. C. § 1725(c)(4) (repealed 1989).[3]   By permitting FSLIC to sue and be sued, Congress effected a "broad" waiver of FSLIC's immunity from suit.   *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 34 (1992).   In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees.   28 U. S. C.

---

[2] Meyer filed a cross-appeal challenging the jury's finding that Pattullo was protected by qualified immunity.   The Ninth Circuit affirmed this finding.   944 F. 2d, at 575–577.   We declined to review this aspect of the case.   *Meyer* v. *Pattullo*, 507 U. S. 984 (1993).

[3] The statute governing FDIC contains a nearly identical sue-and-be-sued clause.   See 12 U. S. C. § 1819(a) Fourth (1988 ed., Supp. IV) (FDIC "shall have power . . . [t]o sue and be sued, and complain and defend, in any court of law or equity, State or Federal").

§ 1346(b).[4]   In order to "place torts of 'suable' agencies . . . upon precisely the same footing as torts of 'nonsuable' agencies," *Loeffler, supra,* at 562 (internal quotation marks omitted), Congress, through the FTCA, limited the scope of sue-and-be-sued waivers such as that contained in FSLIC's organic statute.   The FTCA limitation provides:

> "The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive."   28 U. S. C. § 2679(a).

Thus, if a suit is "cognizable" under § 1346(b) of the FTCA, the FTCA remedy is "exclusive" and the federal agency cannot be sued "in its own name," despite the existence of a sue-and-be-sued clause.

The first question, then, is whether Meyer's claim is "cognizable" under § 1346(b).   The term "cognizable" is not defined in the Act.   In the absence of such a definition, we construe a statutory term in accordance with its ordinary or natural meaning.   *Smith* v. *United States,* 508 U. S. 223, 228 (1993).   Cognizable ordinarily means "[c]apable of being tried or examined before a designated tribunal; within [the] jurisdiction of [a] court or power given to [a] court to adjudicate [a] controversy."   Black's Law Dictionary 259 (6th ed. 1990).   Under this definition, the inquiry focuses on the jurisdictional grant provided by § 1346(b).

---

[4] Section 1346(b) provides:

"[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and "render[ed]" itself liable. *Richards* v. *United States*, 369 U. S. 1, 6 (1962). This category includes claims that are:

> "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U. S. C. § 1346(b).

A claim comes within this jurisdictional grant—and thus is "cognizable" under § 1346(b)—if it is actionable under § 1346(b). And a claim is actionable under § 1346(b) if it alleges the six elements outlined above. See *Loeffler, supra,* at 562 (§ 2679(a) limits the scope of sue-and-be-sued waivers "in the context of suits for which [Congress] *provided a cause of action* under the FTCA" (emphasis added)).[5]

Applying these principles to this case, we conclude that Meyer's constitutional tort claim is not "cognizable" under § 1346(b) because it is not actionable under § 1346(b)—that is, § 1346(b) does not provide a cause of action for such a claim. As noted above, to be actionable under § 1346(b), a claim must allege, *inter alia,* that the United States "would be liable to the claimant" as "a private person" "in accordance with the law of the place where the act or omission occurred." A constitutional tort claim such as Meyer's could

---

[5] Because we were not asked to define "cognizability" in *Loeffler,* our language was a bit imprecise. The question is not whether a claim is cognizable *under the FTCA* generally, as *Loeffler* suggests, but rather whether it is "cognizable *under section 1346(b)*." 28 U. S. C. § 2679(a) (emphasis added).

not contain such an allegation. Indeed, we have consistently held that § 1346(b)'s reference to the "law of the place" means law of the State—the source of substantive liability under the FTCA. See, *e. g., Miree* v. *DeKalb County*, 433 U. S. 25, 29, n. 4 (1977); *United States* v. *Muniz*, 374 U. S. 150, 153 (1963); *Richards, supra*, at 6–7, 11; *Rayonier Inc.* v. *United States*, 352 U. S. 315, 318 (1957). By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right. To use the terminology of *Richards*, the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims. Thus, because Meyer's constitutional tort claim is not cognizable under § 1346(b), the FTCA does not constitute his "exclusive" remedy. His claim was therefore properly brought against FSLIC "in its own name." 28 U. S. C. § 2679(a).

FDIC argues that by exposing a sue-and-be-sued agency to constitutional tort claims, our interpretation of "cognizability" runs afoul of Congress' understanding that § 2679(a) would place the torts of "suable" and "nonsuable" agencies on the same footing. See *Loeffler*, 486 U. S., at 562. FDIC would deem all claims "sounding in tort"—including constitutional torts—"cognizable" under § 1346(b). Under FDIC's reading of the statute, only the portion of § 1346(b) that describes a "tort"—*i. e.*, "claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government"—would govern cognizability. The remaining portion of § 1346(b) would simply describe a "limitation" on the waiver of sovereign immunity.[6]

---

[6] FDIC relies upon *United States* v. *Smith*, 499 U. S. 160 (1991), for its interpretation of the term "cognizable." In *Smith*, the "foreign country" exception, 28 U. S. C. § 2680(k), barred plaintiffs' recovery against the Federal Government for injuries allegedly caused by the negligence of a Government employee working abroad. 499 U. S., at 165. We held that the

We reject this reading of the statute. As we have already noted, § 1346(b) describes the scope of jurisdiction by reference to claims for which the United States has waived its immunity and rendered itself liable. FDIC seeks to uncouple the scope of jurisdiction under § 1346(b) from the scope of the waiver of sovereign immunity under § 1346(b). Under its interpretation, the jurisdictional grant would be broad (covering all claims sounding in tort), but the waiver of sovereign immunity would be narrow (covering only those claims for which a private person would be held liable under state law). There simply is no basis in the statutory language for the parsing FDIC suggests. Section 2679(a)'s reference to claims "cognizable" under § 1346(b) means cognizable under the whole of § 1346(b), not simply a portion of it.[7]

---

FTCA provided plaintiffs' "exclusive remedy," even though the FTCA itself did not provide a means of recovery. *Id.*, at 166. *Smith* did not involve § 2679(a), the provision at issue in this case, but rather § 2679(b)(1), which provides that the FTCA remedy is "exclusive of any other civil action or proceeding for money damages . . . against the employee whose. act or omission gave rise to the claim." The Court had no occasion in *Smith* to address the meaning of the term "cognizable" because § 2679(b)(1) does not contain the term. We therefore find *Smith* unhelpful in this regard.

[7] Nothing in our decision in *Hubsch* v. *United States*, 338 U. S. 440 (1949) *(per curiam)*, is to the contrary. In *Hubsch*, the parties submitted to this Court for approval a settlement agreement under 28 U. S. C. § 2677 (1946 ed., Supp. IV), which at the time provided that the Attorney General, "with the approval of the court," could "settle any claim *cognizable under section 1346(b)*." 338 U. S., at 440 (emphasis added). We construed § 2677 "as imposing on the District Court the authority and responsibility for passing on proposed compromises," notwithstanding the fact that it had found that the claimant failed to prove the Government employee acted within the scope of his authority (the fifth element of § 1346(b) mentioned above). *Id.*, at 441. See also *Hubsch* v. *United States*, 174 F. 2d 7 (CA5 1949). Our holding in the case recognized that a claim does not lose its cognizability simply because there has been a failure of proof on an element of the claim. In this case there has been no failure of proof; rather, Meyer's claim does not fall within the terms of § 1346(b) in the first instance.

B

Because Meyer's claim is not cognizable under § 1346(b), we must determine whether FSLIC's sue-and-be-sued clause waives sovereign immunity for the claim. FDIC argues that the scope of the sue-and-be-sued waiver should be limited to cases in which FSLIC would be subjected to liability as a private entity. A constitutional tort claim such as Meyer's, FDIC argues, would fall outside the sue-and-be-sued waiver because the Constitution generally does not restrict the conduct of private entities. In essence, FDIC asks us to engraft a portion of the sixth element of § 1346(b)—liability "under circumstances where the United States, if a private person, would be liable to the claimant"—onto the sue-and-be-sued clause.

On its face, the sue-and-be-sued clause contains no such limitation. To the contrary, its terms are simple and broad: FSLIC "shall have power . . . [t]o sue and be sued, complain and defend, in any court of competent jurisdiction in the United States." 12 U. S. C. § 1725(c)(4) (repealed 1989). In the past, we have recognized that such sue-and-be-sued waivers are to be "liberally construed," *Federal Housing Administration* v. *Burr*, 309 U. S., at 245, notwithstanding the general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign. See *United States* v. *Nordic Village, Inc.*, 503 U. S., at 34. *Burr* makes it clear that sue-and-be-sued clauses cannot be limited by implication unless there has been a

> "clea[r] show[ing] that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense." 309 U. S., at 245 (footnote omitted).

See also *Loeffler*, 486 U. S., at 561; *Franchise Tax Bd. of Cal.* v. *Postal Service*, 467 U. S. 512, 517–518 (1984). Absent such a showing, agencies "authorized to 'sue and be sued' are presumed to have fully waived immunity." *International Primate Protection League* v. *Administrators of Tulane Ed. Fund*, 500 U. S. 72, 86, n. 8 (1991) (describing the holding in *Burr*).

FDIC does not attempt to make the "clear" showing of congressional purpose necessary to overcome the presumption that immunity has been waived.[8] Instead, it bases its argument solely on language in our cases suggesting that federal agencies should bear the burdens of suit borne by private entities. Typical of these cases is *Burr*, which stated that "when Congress launche[s] a governmental agency into the commercial world and endow[s] it with authority to 'sue or be sued,' *that agency is not less amenable to judicial process than a private enterprise* under like circumstances would be." 309 U. S., at 245 (emphasis added). See also *Franchise Tax Bd., supra,* at 520 ("[U]nder *Burr* not only must we liberally construe the sue-and-be-sued clause, but also we must presume that the [Postal] Service's liability *is the same as that of any other business*") (emphasis added); *Loeffler, supra,* at 557 (through a sue-and-be-sued clause, "Congress waived [the Postal Service's] immunity from interest awards, authorizing recovery of interest from the Postal Service *to the extent that interest is recoverable against a private party* as a normal incident of suit" (emphasis added)).

When read in context, however, it is clear that *Burr, Franchise Tax Board,* and *Loeffler* do not support the limitation FDIC proposes. In these cases, the claimants sought to subject the agencies to a particular suit or incident of suit to which private businesses are amenable as a matter of course.

---

[8] In its brief discussion of the sue-and-be-sued clause, FDIC does not mention—let alone attempt to overcome—the presumption of waiver. See Brief for Petitioner 12–13.

In *Burr*, for example, the claimant, who had obtained a judgment against an employee of the Federal Housing Administration (FHA), served the FHA with a writ to garnish the employee's wages. 309 U. S., at 243, 248, n. 11. Similarly, in *Franchise Tax Board*, the claimant directed the United States Postal Service to withhold amounts of delinquent state income taxes from the wages of four Postal Service employees. 467 U. S., at 513. And in *Loeffler*, the claimant, who was discharged from his employment as a rural letter carrier, sought prejudgment interest as an incident of his successful suit against the Postal Service under Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq.* 486 U. S., at 551–552.

Because the claimant in each of these cases was seeking to hold the agency liable just like "any other business," *Franchise Tax Board, supra,* at 520, it was only natural for the Court to look to the liability of private businesses for guidance. It stood to reason that the agency could not escape the liability a private enterprise would face in similar circumstances. Here, by contrast, Meyer does not seek to hold FSLIC liable just like any other business. Indeed, he seeks to impose on FSLIC a form of tort liability—tort liability arising under the Constitution—that generally does not apply to private entities. *Burr, Franchise Tax Board,* and *Loeffler* simply do not speak to the issue of sovereign immunity in the context of such a constitutional tort claim.

Moreover, nothing in these decisions suggests that the liability of a private enterprise should serve as the *outer boundary* of the sue-and-be-sued waiver. Rather, those cases "merely involve[d] a determination of whether or not [the particular suit or incident of suit] [came] within the scope of" the sue-and-be-sued waiver. *Burr, supra,* at 244. When we determined that the particular suit or incident of suit fell within the sue-and-be-sued waiver, we looked to the liability of a private enterprise as a *floor* below which the agency's liability could not fall. In the present case, by con-

trast, FDIC argues that a sue-and-be-sued agency's liability should never be *greater* than that of a private entity; that is, it attempts to use the liability of a private entity as a *ceiling*. Again, nothing in *Burr, Franchise Tax Board,* or *Loeffler* supports such a result.

Finally, we hesitate to engraft language from § 1346(b) onto the sue-and-be-sued clause when Congress, in § 2679(a), expressly set out how the former provision would limit the latter. As provided in § 2679(a), § 1346(b) limits sue-and-be-sued waivers for claims that are "cognizable" under § 1346(b). Thus, § 2679(a) contemplates that a sue-and-be-sued waiver could encompass claims not cognizable under § 1346(b) and render an agency subject to suit unconstrained by the express limitations of the FTCA. FDIC's construction—taken to its logical conclusion—would not permit this result because it would render coextensive the scope of the waivers contained in § 1346(b) and sue-and-be-sued clauses generally. Had Congress wished to achieve that outcome, it surely would not have employed the language it did in § 2679(a). See *Connecticut Nat. Bank* v. *Germain,* 503 U. S. 249, 253–254 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there"). Because "[n]o showing has been made to overcome [the] presumption" that the sue-and-be-sued clause "fully waived" FSLIC's immunity in this instance, *Franchise Tax Board, supra,* at 520; *International Primate Protection League,* 500 U. S., at 86, n. 8, we hold that FSLIC's sue-and-be-sued clause waives the agency's sovereign immunity for Meyer's constitutional tort claim.

## III

Although we have determined that Meyer's claim falls within the sue-and-be-sued waiver, our inquiry does not end at this point. Here we part ways with the Ninth Circuit, which determined that Meyer had a cause of action for damages against FSLIC *because* there had been a waiver of sov-

ereign immunity. 944 F. 2d, at 572. The Ninth Circuit's reasoning conflates two "analytically distinct" inquiries. *United States* v. *Mitchell,* 463 U. S., at 218. The first inquiry is whether there has been a waiver of sovereign immunity. If there has been such a waiver, as in this case, the second inquiry comes into play—that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief. *Id.,* at 216–217. It is to this second inquiry that we now turn.

Meyer bases his due process claim on our decision in *Bivens,* which held that an individual injured by a federal agent's alleged violation of the Fourth Amendment may bring an action for damages against the agent. 403 U. S., at 397. In our most recent decisions, we have "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Schweiker* v. *Chilicky,* 487 U. S. 412, 421 (1988).[9] In this case, Meyer seeks a significant extension of *Bivens:* He asks us to expand the category of defendants against whom *Bivens*-type actions may be brought to include not only federal *agents,* but federal *agencies* as well.

We know of no Court of Appeals decision, other than the Ninth Circuit's below, that has implied a *Bivens*-type cause of action directly against a federal agency. Meyer recognizes the absence of authority supporting his position, but argues that the "logic" of *Bivens* would support such a remedy. We disagree. In *Bivens,* the petitioner sued the agents of the Federal Bureau of Narcotics who allegedly violated his rights, not the Bureau itself. 403 U. S., at 389–390.

---

[9] For example, a *Bivens* action alleging a violation of the Due Process Clause of the Fifth Amendment may be appropriate in some contexts, but not in others. Compare *Davis* v. *Passman,* 442 U. S. 228, 248–249 (1979) (implying *Bivens* action under the equal protection component of the Due Process Clause in the context of alleged gender discrimination in employment), with *Schweiker* v. *Chilicky,* 487 U. S., at 429 (refusing to imply *Bivens* action for alleged due process violations in the denial of Social Security disability benefits on the ground that a damages remedy was not included in the elaborate remedial scheme devised by Congress).

Here, Meyer brought precisely the claim that the logic of *Bivens* supports—a *Bivens* claim for damages against Pattullo, the FSLIC employee who terminated him.[10]

An additional problem with Meyer's "logic" argument is the fact that we implied a cause of action against federal officials in *Bivens* in part *because* a direct action against the Government was not available. *Id.*, at 410 (Harlan, J., concurring in judgment). In essence, Meyer asks us to imply a damages action based on a decision that presumed the *absence* of that very action.

Meyer's real complaint is that Pattullo, like many *Bivens* defendants, invoked the protection of qualified immunity. But *Bivens* clearly contemplated that official immunity would be raised. *Id.*, at 397 (noting that "the District Court [had] ruled that . . . respondents were immune from liability by virtue of their official position"). More importantly, Meyer's proposed "solution"—essentially the circumvention of qualified immunity—would mean the evisceration of the *Bivens* remedy, rather than its extension. It must be remembered that the purpose of *Bivens* is to deter *the officer*. See *Carlson* v. *Green*, 446 U. S. 14, 21 (1980) ("Because the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy against the United States"). If we were to imply a damages action directly against federal agencies, thereby permitting claimants to bypass qualified immunity, there would be no reason for aggrieved parties to bring damages actions against individual officers. Under Meyer's regime, the deterrent effects of the *Bivens* remedy would be lost.

---

[10] Although not critical to our analysis, we note that in addition to the *Bivens* claim against Pattullo, Meyer initially brought a contractual claim against FSLIC, which he later dropped. Meyer also could have filed a claim with FSLIC as receiver for the value of any contractual rights he believed were violated. See 12 U. S. C. § 1729(d) (repealed 1989); 12 CFR §§ 569a.6, 569a.7 (1982); *Coit Independence Joint Venture* v. *FSLIC*, 489 U. S. 561, 580–581 (1989).

Finally, a damages remedy against federal agencies would be inappropriate even if such a remedy were consistent with *Bivens.* Here, unlike in *Bivens,* there are "special factors counselling hesitation" in the creation of a damages remedy. *Bivens,* 403 U. S., at 396. If we were to recognize a direct action for damages against federal agencies, we would be creating a potentially enormous financial burden for the Federal Government. Meyer disputes this reasoning and argues that the Federal Government already expends significant resources indemnifying its employees who are sued under *Bivens.* Meyer's argument implicitly suggests that the funds used for indemnification could be shifted to cover the direct liability of federal agencies. That may or may not be true, but decisions involving "'federal fiscal policy'" are not ours to make. *Ibid.* (quoting *United States* v. *Standard Oil Co. of Cal.,* 332 U. S. 301, 311 (1947)). We leave it to Congress to weigh the implications of such a significant expansion of Government liability.[11]

## IV

An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself. We therefore hold that Meyer had no *Bivens* cause of action for damages against FSLIC. Accordingly, the judgment below is reversed.[12]

*So ordered.*

---

[11] In this regard, we note that Congress has considered several proposals that would have created a *Bivens*-type remedy directly against the Federal Government. See, *e. g.,* H. R. 440, 99th Cong., 1st Sess. (1985); H. R. 595, 98th Cong., 1st Sess. (1983); S. 1775, 97th Cong., 1st Sess. (1981); H. R. 2659, 96th Cong., 1st Sess. (1979).

[12] Because we find that Meyer had no *Bivens* action against FSLIC, we do not reach the merits of his due process claim.