**Halina MAZUR, Plaintiff,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE,**
Defendant.

No. 96 C 7722.

United States District Court,
N.D. Illinois,
Eastern Division.

March 31, 1997.

Scott D. Pollock, Chicago, IL, for Plaintiff.

James B. Burns, U.S. Atty. and James G. Hoofnagle, Sp. Asst. U.S. Atty., Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Halina Mazur ("Mazur") originally sued the United States Immigration and Naturalization Service ("INS") for damages, seeking to invoke federal jurisdiction under the Federal Tort Claims Act ("Act"), 28 U.S.C. §§ 2671–2680. Based on its initial review of the Complaint, this Court sua sponte dismissed INS as a defendant in a brief December 2, 1996 memorandum opinion and order, substituting the United States itself in its stead.

Now the United States has moved to dismiss Mazur's Complaint for lack of subject matter jurisdiction, a motion that does not implicate the sympathetic set of facts that Mazur sets out but that rather relies on two independent arguments, the success of either of which will compel dismissal:

    1.  the asserted untimeliness of Mazur's filing of her administrative claim—a jurisdictional (and nonwaivable) precondition to suit under the Act (cf., e.g., *Kuznitsky v. United States,* 17 F.3d 1029, 1031 (7th Cir.1994), dealing with the corresponding precondition under the Internal Revenue Code); and

    2.  the asserted unavailability of a private action under the Act under the circumstances involved here.

This opinion will address only the first of those contentions, which is alone sufficient to doom Mazur's claim.

In this instance any tort claim that Mazur might assert against the United States could well be said to have accrued on October 1, 1992, because her potential eligibility for permanent residence in the United States under the AA–1 visa lottery program was conditioned on the complete processing of her application before the September 30, 1992 fiscal-year-end date on which that program ended. Mazur might well be held to have had knowledge of the fact that she had been injured (and of course of the additional fact that the United States itself had caused that injury) when that October 1, 1992 date passed without her being advised that her application had been approved.

■■ But it is unnecessary to go that far to bar Mazur's claim here. Under her own allegations (Complaint ¶ 9), she was told in January 1993 that her application would be *denied* and that she would be notified when she had to appear for a deportation hearing. After she then retained counsel (Complaint ¶ 12), on September 8, 1993 her lawyer wrote the INS official involved confirming that the official had said that Mazur's case had "fallen between the cracks." At the very outside, then, any tort claim by Mazur had then accrued (*United States v. Kubrick*, 444 U.S. 111, 120–22, 100 S.Ct. 352, 358–60, 62 L.Ed.2d 259 (1979)), so that the two-year time clock established by 28 U.S.C. § 2401(b) ("Section 2401(b)") for filing an administrative claim began to tick not later than that date (cf. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1266–67 (7th Cir.1994)). With Mazur's administrative claim not having been filed until January 25, 1996—as the United States says, "well beyond the prescribed two-year limitations period by even the most generous of calculations"—limitations have "forever barred" the claim and hence this lawsuit under Section 2401(b) (*Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir.1994)).

In an effort to escape that result, Mazur's counsel has responded to this Court's request for the citation of authority in support of her claim by urging that her claims did not accrue until either October 11, 1995 (when the INS formally denied her application for adjustment of status) or October 25, 1995 (when the INS commenced formal deportation proceedings). But that misses the fundamental distinction between the *fact* of injury, when the injured party's claim ripens, and the *effect* of injury, which may take place later. In that respect this case is conceptually parallel to such cases as *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), for the unequivocal notice to Mazur in January 1993 that her application would be denied and that she would be told when to appear for deportation corresponds to the notice given to Ricks that he would be denied tenure (the action that the Supreme Court held had triggered the ticking of the limitations clock), even though his employment was not actually terminated by reason of the denial of tenure until later. As *Ricks, id.* at 258, 101 S.Ct. at 504 (citations and footnote omitted, emphasis in original) put it:

> In sum, the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later. The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." It is simply insufficient for Ricks to allege that his termination "gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination."

Just so here. INS' assertedly unlawful action had taken place by October 1, 1992, when it had failed to complete the processing of Mazur's application by the absolute deadline of September 30. Mazur might perhaps claim a lack of discovery of that action—her injury—as of that date (even though at worst an inquiry at that time would have revealed the INS' failure), but she cannot extend any such lack of discovery beyond the time in January 1993 that she was expressly *told* of

the INS' failure and its consequences. As in *Ricks*, then, Mazur cannot successfully focus "upon the time at which the *consequences* of the acts became most painful." There was plenty of time available for her to invoke the Act by January 1995—and not having done so, Mazur is out of court on limitations grounds.

▮ That renders it unnecessary to test the strength of the other string to the United States' jurisdictional bow, for what has already been said suffices to require dismissal of this action. Because suits under the Act are lawsuits against the sovereign, no jurisdiction exists over such lawsuits except to the extent that the United States has waived its sovereign immunity (*FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994)). It is the United States' position that in the area of law now at issue—matters relating to immigration and naturalization of aliens—*only* the United States has the power to act. Accordingly, the government says, there is no private analog under state law (see, e.g., *Akutowicz v. United States*, 859 F.2d 1122, 1125–26 (2d Cir.1988)). If so, Mazur would have no predicate for bringing a tort action under the auspices of the Act to begin with.

Mazur's counsel responds by citing to, and seeking to draw analogies from, a number of cases under the Act—a few involving INS agents and others involving other governmental employees. Because on the subject of the state-law private analog there is no bright-line rule stated by a definitive authority (such as in *Ricks* on the limitations issue), it would require an extended parsing of the cases to deal with the matter on that ground. No such effort is needed here, for Mazur's case has already failed.

### Conclusion

Under the government's view, two independent reasons call for dismissal of both the Complaint and this action for lack of subject matter jurisdiction. Because either suffices for that purpose, this action is doomed by its untimeliness—and it is unnecessary to re-

solve the other issue. This Court grants the United States' motion for such dismissal.