**Anthony Dewitt NORMAN,**
**Plaintiff–Appellant,**

v.

**Charles CAMPBELL, and Galen Hospi-**
**tal of Illinois, Inc., formerly doing**
**business as Michael Reese Hospital &**
**Medical Center, Defendants–Appel-**
**lees.**

No. 03–2540.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 10, 2003.*

Decided Dec. 19, 2003.

---

* Appellee Charles Campbell, notified this court that he was never served with process in the district court and would not be filing a brief or otherwise participating in this appeal. After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Anthony D. Norman, Richton Park, IL, for Plaintiff–Appellant.

Christopher J. May, Hall, Prangle & Schoonveld, Chicago, IL, for Defendant–Appellee.

Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

### ORDER

Anthony Dewitt Norman filed a pro se amended complaint alleging that his doctor, Charles Campbell, and Galen Hospital of Illinois, Inc. (doing business in Chicago as Michael Reese Hospital & Medical Center at the time of the events in question) committed medical malpractice and battery during surgeries in 1990 and 1996. The district court dismissed his complaint for lack of subject matter jurisdiction. We affirm.

This case has its roots in state court. Before filing his federal complaint, Norman in 2000 had already brought suit against these same parties in an Illinois court. Norman, who is represented by counsel in his state action, voluntarily dismissed his initial complaint but refiled the state case in late 2001. In that suit he seeks $100 million in damages. Apparently that lawsuit remains pending.

Meanwhile, Norman came to federal court without his lawyer and filed a lawsuit essentially identical to his state case, except that he referenced 42 U.S.C. § 1983 in the form cover sheet provided by the clerk of court. Norman also noted on the cover sheet that his case arose under the diversity jurisdiction, but nonetheless he represented that he and the defendants were all citizens of Illinois. The district court promptly alerted Norman that his suit lacked any apparent basis of federal jurisdiction but granted Norman leave to amend his complaint. Norman did amend, this time demanding $430 million in compensatory and punitive damages and alleging specifically in the body of his complaint that he, Dr. Campbell, and Michael Reese Hospital are all residents of Illinois. Norman renewed his negligence claim and added that the defendants had committed battery, subjected him to unauthorized medical experiments, and conspired to injure him.

Dr. Campbell was never served, but Galen Hospital (which had sold Michael Reese Hospital in 1997) entered its appearance and moved to dismiss for lack of subject matter jurisdiction. In response Norman again asserted that the district court had diversity jurisdiction, and argued as well that he stated a claim under § 1983 because the defendants' receipt of state funding established state action. Norman also cited several criminal statutes as well as 42 U.S.C. § 1985 and 50 U.S.C. § 1520a, the latter provision forbidding the Secretary of Defense from conducting medical experiments without permission of Congress and the participant. This time Norman supplied the details: as an infant in the 1970s he was living on the island of St. Croix when he became exposed to staphylococcal enterotoxin B(SEB), a biological agent that United States military scientists in the Virgin Islands were trying to weaponize. By the age of two Norman had contracted

Kawasaki disease, an inflammation of the blood vessels that may lead to permanent heart damage. He was being treated for the condition at Michael Reese Hospital when he suffered a heart attack that caused severe damage. Norman attributes all of his follow-up care at the hospital over the years, including heart surgery in 1990 and an operation in 1996 to repair sternal damage resulting from the earlier surgery, to a conspiracy between Dr. Campbell, Michael Reese Hospital, and the Departments of Defense and Energy to conduct unauthorized experiments, while performing medical procedures, in order to study the effects of his exposure to SEB.

■ In challenging the grant of Galen Hospital's motion to dismiss, Norman first presses his argument that the district court had federal-question jurisdiction over his amended complaint. None of Norman's claims, though, arises under federal law. Norman posits that Dr. Campbell and Michael Reese Hospital received state funding for clinical research and thus were state actors liable to him under § 1983 for violating his civil rights, but a private person's receipt of state funds, without more, does not make that person a state actor. *See Blum v. Yaretsky,* 457 U.S. 991, 1011, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (holding that private nursing home did not engage in state action despite its extensive regulation by state and receipt of 90 percent of its income from state); *Rendell–Baker v. Kohn,* 457 U.S. 830, 840, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (holding that private school did not engage in state action despite receipt of public funds and degree of state regulation). Norman's § 1983 conspiracy theory does not change our conclusion because he does not allege that Dr. Campbell or Michael Reese Hospital formed a conspiracy with a state actor to violate his constitutional rights, which would have subjected the defen-dants, as private actors, to § 1983 liability. *See Brokaw v. Mercer County,* 235 F.3d 1000, 1016 (7th Cir.2000). Further, Norman's allegation of involvement by the Departments of Defense and Energy does not give rise to a parallel conspiracy claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Bivens* does not authorize suits against federal agencies, *FDIC v. Meyer,* 510 U.S. 471, 484–85, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), and, in any event, Norman's incantation of a conspiracy fails even to give Dr. Campbell and Galen Hospital the most general notice of how they allegedly conspired with these agencies or any employees of these agencies, *see, e.g., Walker v. Thompson,* 288 F.3d 1005, 1007–08 (7th Cir.2002).

■ Norman's other proposed bases for federal-question jurisdiction fare no better. Section 1985(3) is inapplicable because Norman does not allege that the defendants harbored a "racial, or perhaps otherwise class-based invidiously discriminatory animus," *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), putting aside any requirement of government action, *see Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 278, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993); *Brokaw,* 235 F.3d at 1024 n. 20. Nor can Norman rely on 50 U.S.C. § 1520a, a statute directed at the Secretary of Defense. Even assuming the statute allows a private cause of action, which seems doubtful, the absence of a federal party or even the mention of a federal actor in his amended complaint suffices for us to reject the use of this statute to support federal question jurisdiction. Finally, none of the cited criminal statutes provides a basis for federal-question jurisdiction because private parties may not pursue claims under federal criminal statutes. *See Mallard v.*

*United States Dist. Court for S. Dist. of Iowa,* 490 U.S. 296, 306 n. 5, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989).

That leaves Norman's argument that he established diversity jurisdiction. He contends that Galen Hospital is the alter ego of a parent corporation, HCA, Inc., and thus we should look to HCA's principal place of business–Tennessee–in evaluating Galen Hospital's citizenship. Norman, though, actually focuses on the residency, not the citizenship, of the parties, but allegations of residency cannot invoke the diversity jurisdiction. *See Steigleder v. McQuesten,* 198 U.S. 141, 143, 25 S.Ct. 616, 49 L.Ed. 986 (1905); *Tylka v. Gerber Prods. Co.,* 211 F.3d 445, 448 (7th Cir.2000). Since there is no other basis for federal jurisdiction, that deficiency was enough to require dismissal. *See Tylka,* 211 F.3d at 448. But even were we to read "citizenship" as "residency," and even if we were to view Galen Hospital and HCA, Inc., as a single entity, complete diversity does not exist since Norman and Dr. Campbell are presumably both citizens of Illinois. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1808) (meaning of "complete diversity" now required by 28 U.S.C. § 1332(a)); *Howell by Goerdt v. Tribune Entm't Co.,* 106 F.3d 215, 217 (7th Cir.1997). Thus, the district court correctly concluded that it lacked jurisdiction over Norman's amended complaint.

AFFIRMED.