EBEL, Circuit Judge,
concurring and dissenting.
Although I agree that the question before us does not implicate jurisdictional issues, I simply reach a different result regarding the availability of a Bivens[1] remedy against employees of private prison facilities. Accordingly, I join Part II of the majority’s analysis but must respectfully dissent from the remainder of the opinion.[2]

Precedent

The majority’s conclusion that a Bivens action is unavailable in this case purports to rest upon on a reading of the Supreme Court’s precedent. My reading of that precedent, however, dictates a contrary result. In particular, the majority relies heavily on the following language from Correctional Services Corp. v. Malesko, *1109 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001):
In 30 years of Bivens jurisprudence, the Court has extended its holding only twice, to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, \e.g., Carlson ], and to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer’s unconstitutional conduct, [e.g., Davis ]. Where such circumstances are not present, the Court has consistently rejected invitations to extend Bivens, often for reasons that foreclose its extension here.
Id. at 70, 122 S.Ct. 515. “An alternate cause of action for damages against an individual defendant,” the majority reasons, “eliminates either of those two circumstances ....” In my view, however, the “otherwise nonexistent cause of action” the Malesko court references does not refer simply to the presence of any cause of action. Rather, the alternate “cause of action” sufficient to preclude a Bivens action must be a constitutional cause of action. Bivens, after all, is a remedy implied for a constitutional violation. A state tort cause of action (not predicated on a constitutional violation) is not an adequate alternative remedy for a constitutional violation.
The problem with the majority’s approach is that it treats all causes of action for damages as fungible units. Such an analysis is contrary to the Supreme Court’s holding in Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), where the Court implied a Bivens remedy despite the availability of relief against the United States under the Federal Tort Claims Act (“FTCA”), 28 U.S.C. § 1346. Carlson, 446 U.S. at 24, 100 S.Ct. 1468. Because the FTCA applies only in instances where a private person would be liable under state law, see 28 U.S.C. § 1346(b)(1), the plaintiff in Carlson (just like Plaintiff here) could also have asserted a state-law tort claim against the individual officers. Yet in Carlson, the Court allowed a Bivens cause of action. 446 U.S. at 24, 100 S.Ct. 1468.
If the presence of a tort claim against individual officers was not sufficient to preclude a Bivens remedy against those officers in Carlson, so too should the availability of state-law tort claims against the instant defendants here be an insufficient substitute for the constitutional cause of action Bivens provides. If a state tort suit brought against a federal employee is not a meaningful substitute for a constitutional right of action, then an identical suit brought against a private prison employee similarly should not be a meaningful substitute for a constitutional right of action.
Indeed, it was the lack of a constitutional cause of action (and the concomitant reliance on state tort law as a mechanism for enforcing federal constitutional rights) that gave rise to Bivens in the first place. As the Bivens Court noted, a remedial scheme based on state tort law
[seeks] to treat the relationship between a citizen and a federal agent unconstitutionally exercising his authority as no different from the relationship between two private citizens. In so doing, [this approach] ignore[s] the fact that power, once granted does not disappear like a magic gift when it is wrongfully used. An agent acting — albeit unconstitutionally — in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own.
Bivens, 403 U.S. at 391-92, 91 S.Ct. 1999. The majority in Bivens rested its conclusion, in part, on a rejection of the notion that the constitution “proscribes only such conduct as would, if engaged by private *1110 persons, be condemned under state law.” Id. at 392, 91 S.Ct. 1999 (referencing the Fourth Amendment). Furthermore, the Court was clear that the constitution limits federal officials’ power, “regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen.” Id.
The majority’s opinion abandons these principles, even though the Supreme Court has never overruled Bivens or any of its progeny. To the contrary, the Court’s opinion in Malesko, which foreclosed the availability of a Bivens remedy against the private prison entity itself, clearly assumed the availability of the remedy against the employees of that prison.
In Malesko, the plaintiffs Bivens action originally named both the private prison facility and ten individual employees as defendants. 534 U.S. at 64-65, 122 S.Ct. 515. The district court, however, dismissed the complaint as to the individual defendants on statute of limitations grounds, and Malesko did not appeal that ruling. Id. at 65, 122 S.Ct. 515. Thus, when the case reached the Supreme Court, the only remaining defendant was the correctional facility itself. Id. In rejecting the possibility of a Bivens remedy against a corporate entity, the Court compared the relief Malesko sought to that available to other federal prisoners housed in public prisons:
If a federal prisoner in a [Bureau of Prisons] facility alleges a constitutional deprivation, he may bring a Bivens claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a Bivens claim against the officer’s employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual; a remedy Meyer[3] found sufficient, and which [Malesko] did not timely pursue.
Id. at 72, 122 S.Ct. 515 (emphasis, footnote added). The italicized language clearly indicates that the Court based its refusal to extend Bivens liability to a private prison, in part, on an assumption that such a remedy would be appropriate against the employees of that private prison. The dissenters, led by Justice Stevens, also noted this aspect of the majority opinion:
Both CSC[, the private prison,] and [Malesko] have assumed that Bivens would apply to [CSC employees], and the United States as amicus maintains that such liability would be appropriate under Bivens. ... [T]he reasoning of the Court’s opinion relies, at least in part, on the availability of a remedy against employees of private prisons.
Id. at 79 n. 6, 122 S.Ct. 515 (Stevens, J., dissenting).
Taken together, Bivens, Carlson, and Malesko all support the proposition that a damages remedy is available against employees of private prison facilities. Doctrinal reasons aside, however, there are a number of other factors weighing in favor of such a holding as well.

Parallelism

The majority’s opinion undercuts the important policy objective of promoting public-private symmetry, a desire that was clearly at work in Malesko. In Malesko, the majority, noting that federal prisoners could not sue the United States as operator of public federal prisons under Bivens, refused to impose any different standard of liability on private operators of federal *1111 prisons. See Malesko, 534 U.S. at 72, 122 S.Ct. 515 (“Whether it makes sense to impose asymmetrical liability costs on private prison facilities alone is a question for Congress, not us, to decide.”).
On the other hand, a desire to promote state-federal symmetry was also one of the major concerns shared by the dissenters in Malesko:
Indeed, it is the Court’s decision that creates asymmetry — between federal and state prisoners housed in private correctional facilities. Under 42 U.S.C. § 1983, a state prisoner may sue a private person for deprivation of constitutional rights, yet the Court denies such a remedy to that prisoner’s federal counterpart. It is true that we have never expressly held that the contours of Bivens and § 1983 are identical. The Court, however, has recognized sound jurisprudential reasons for parallelism, as different standards for claims against state and federal actors would be incongruous and confusing.
Id. at 81, 122 S.Ct. 515 (Stevens, J., dissenting) (citations, quotations omitted).[4]
Thus, there existed in Malesko a tension between furthering public-private symmetry and state-federal symmetry. That tension, however, is not present in the instant case. The chart below summarizes the availability of a Bivens/§ 1983 remedy against various types of defendants:_
Defendant_Bivens action § 1983 action
Governmentally-run No [5] No [6] _prison_
Privately-run No [7] Yes [8] _prison_
Officer in Yes [9] Yes [10] governmentally-run _prison_
Officer in ??? Yes[11] privately-run prison
*1112 Reading the table horizontally tells us whether state-federal symmetry exists. Reading it vertically tells us whether public-private symmetry exists. Thus, public-private symmetry exists in Bivens suits against both governmentally-run and privately-run federal prisons. There is also symmetry in § 1983 actions against the officials who manage both governmentally-run and privately-run state prisons. State-federal symmetry exists with suits against both governmentally-run prisons and against the officers who manage them. There is an asymmetry between Bivens actions against privately-run federal prisons (which are not allowed) and § 1983 actions against privately-run state prisons (which are).
Parallelism was a difficult policy objective to satisfy in Malesko because at the time that case was decided, it was impossible to satisfy both state-federal symmetry and public-private symmetry. Permitting the Bivens action there asserted would have meant that private inmates had more rights than public inmates. Denying the remedy would have meant (and in fact does mean) that state inmates have more rights than federal inmates. Thus, in Mal-esko, it was impossible to satisfy both types of symmetry, and it seems that the Court simply made a decision as to which of the two was the more important. But the case before us does not present this type of irreconcilable conflict.
Here, the only way to accomplish both public-private symmetry and state-federal symmetry is to permit the Bivens action against private officials. Any other outcome would create asymmetry on both the public-private and state-federal levels, something which both the majority and dissenters in Malesko sought to avoid.

Uniformity

By making the availability of a Bivens remedy against private prison guards dependent upon the absence of any state-law remedy, the majority’s opinion ignores the Supreme Court’s observation in Carlson, that
it is obvious that the liability of federal officials for violations of citizens’ constitutional rights should be governed by uniform rules. The question whether [a plaintiffs] action for violations by federal officials of federal constitutional rights should be left to the vagaries of the laws of the several States admits of only a negative answer in the absence of a contrary congressional resolution.
446 U.S. at 23, 100 S.Ct. 1468 (citation omitted). While the above-quoted statement was offered as a justification for extending the Bivens right into the Eighth Amendment context, the Carlson Court further reinforced this point in the final section of its opinion when it held that only a uniform federal rule of survivorship could govern the availability of constitutional remedies when the plaintiff has died. Id.
Non-uniform rules of liability, such as the majority embraces today, do little to protect constitutional rights and may undermine the settled expectations of prisoners and prison guards, who may be transferred among different privately-run federal prison facilities located in different states.
Under the majority’s approach, not only does the standard of liability depend on the varying contours of state law, it is, as evidenced by the instant case, an intensely fact-driven endeavor. Here, in dealing with Plaintiffs’ Due Process claims, the majority only identifies a state-law analogue for one of the three asserted claims — Plaintiffs allegation that CCA officials monitored telephone conversations *1113 with his attorney. As to the other two (placement in administrative segregation and access to the law library), the majority simply proceeds directly to the merits in affirming the district court’s dismissal. But if these two remaining claims had been meritorious, the majority does not say whether a Bivens remedy would have been appropriate. And even taking the one claim that the majority found to be addressed by state law (monitoring attorney conversations), if the facts were slightly different, the Kansas statutes the majority cites would not apply. Imagine, for instance, that CCA officials had not listened in to phone conversations, but rather had insisted that a prison guard and court reporter be present in the room whenever Plaintiff met with his lawyer. Such conduct would likely amount to a Due Process violation, but Kan. Stat. Ann. §§ 21-4001 and 21-4002 would not prohibit this conduct.
Thus, what we have here under the majority opinion is a framework where some, but not all, due process violations should be brought as Bivens actions and some should be brought as state-law tort suits. This is precisely the problem that arises when courts attempt to use state tort law as a substitute for constitutional protections and serves as yet another reason why the majority’s reasoning is flawed.

Deterrence

My final objection to the majority opinion is that its result undermines the policy objective of individual deterrence that is a primary goal of the Bivens remedy. As the court in Malesko noted, “if a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury.” 534 U.S. at 71, 122 S.Ct. 515. Here, it is true that a state-law tort remedy could be brought against the individual prison guards as to one of the claims, but perhaps not as to the other two claims which involve different conduct, and therefore there is no deterrence as to that conduct. Further, any state claim may be more limited than would be a Bivens action. Accordingly, any deterrent value provided by individualized tort suits against private prison guards is significantly undercut.

Conclusion

For the reasons stated above, I respectfully dissent.

. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 389, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

. The majority has written a very fine opinion on what it concedes to be a very close case. Perhaps this question, which will undoubtedly arise again given the increasing privatization of prison facilities, ultimately ought to be decided by the Supreme Court.

. Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 473, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (declining to imply a Bivens remedy against the government itself, as opposed to individual officers)

. This point touches on a deeper issue in Constitutional law, the notion that restrictions imposed upon the states in the name of furthering constitutional rights should, for structural reasons, be imposed to the same degree on the federal government. This helps explain why, for instance, the Supreme Court ordered desegregation of the District of Columbia schools on the same day as it issued Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). See Bolling v. Sharpe, 347 U.S. 497, 500, 74 S.Ct. 693, 98 L.Ed. 884 (1954) (“In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government”).

. See Meyer, 510 U.S. at 484—86, 114 S.Ct. 996.

. Such an action would be barred by state sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 338-40, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

. Malesko, 534 U.S. at 66, 122 S.Ct. 515.

. See Lugar v. Edmondson Oil. Co., 457 U.S. 922, 941-42, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (permitting suit under § 1983 against private corporations exercising state action).

. See Bivens, 403 U.S. at 389, 91 S.Ct. 1999.

. See 42 U.S.C. § 1983

. See Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 461 (5th Cir.2003) (holding that employees of private prison-management company may be sued under § 1983 because confinement of wrongdoers — though sometimes delegated to private entities — is a fundamentally governmental function); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996) (holding that employees of private prison-management company were acting under color of state law for § 1983 purposes in that they were performing a "traditional state function”); Ancata v. Prison Health Servs., 769 F.2d 700, 703 (11th Cir.1985) (holding that employees of a private medical service responsible for treating state prisoners engaged in state action subjecting it to suit under § 1983 because it performed “a function which is traditionally the exclusive prerogative of the state”); see also Robin Miller, Annotation, Rights of Prisoners in Private Prisons, 119 A.L.R. 5th 1, 28-29 (2004).