EDITH H. JONES, Circuit Judge,
dissenting:
With due respect, I dissent from Part III of the majority opiniqn, which upholds the district court’s decision to “equitably subordinate” Augustine’s claim as a creditor to those of Great White’s shareholders. In my view, the district court’s findings justifying subordination are contradictory of earlier proceedings in the case and cannot be upheld. I would vacate and remand.
As the majority notes, two district court findings are key to its punitive ruling: that *558 Augustine “knowingly” and “willfully” violated the court’s stay order when it commenced an involuntary bankruptcy against Great White, and that Augustine’s action wasted a lot of estate funds used to defend the “improperly filed bankruptcy.”
The majority opinion, in my view, overlooks significant details concerning the status of the record in this case. First, on June 19, 2001, final judgments were entered against the defendants. According to the district court’s docket sheet, the case was dosed. The Agent had been appointed, and the court expressly retained jurisdiction in the final judgments “for all purposes.” Not even a reasonably astute reader of the court’s docket at that point would easily have learned that the court’s stay order against creditors of Great White, which was entered a year earlier, was to be maintained. Second, the only testimony that supports a finding that Augustine “knew” of the stay order is that of the Agent, who informed Augustine’s accountant sometime during the summer of 2001 that there were “usually” stay orders entered in these cases. The district court, ruling precisely on this testimony in November 2001, concluded only that Augustine was on inquiry notice of the pendency of the stay. That was as far as the judge would go at that time.
Further, in an agreed order entered in August, 2002, the court expressly superseded his findings in his November 16, 2001, order. The agreed order specified that the findings of fact, conclusions of law, and the “so-ordered” provisions of the November 16, 2001, order “are hereby superseded and the terms of the instant agreed order shall control the relationship .... ” Thus, even the court’s weak “inquiry notice” finding against Augustine was abandoned.
With regard to the bankruptcy case, Augustine points out that once it received actual notice of the stay order, it promptly informed the bankruptcy court, and it did not object to transferring the case to Waco. The Agent did not appear in Chicago to contest the entry of an order for relief. The bankruptcy went on in Waco for about a year until the district court, sitting as the bankruptcy court, concluded that he should abstain. During this time, however, all the parties treated the bankruptcy as a viable proceeding in which various aspects of the parties’ disputes could be resolved.[1]
In the court’s written opinion on the motion to abstain from continuing the bankruptcy case, the court does not actually accuse Augustine of impropriety. Instead, he states, Augustine instigated the bankruptcy late in time to make a claim that creditors’ interests must totally prevail over those of defrauded shareholders. Later in that opinion, the court expressly recognizes that the determination of relative priority among creditors and shareholders remains to be decided as a legal matter.
Based on these rulings, I believe the district court flatly contradicted himself in his later ruling that Augustine “knowingly” and “willfully” violated the stay order. He had initially been unwilling to make that direct finding, and the order mentioning Augustine’s inquiry notice was expressly superseded in all regards in the *559 agreed order less than a year later. It is further inconsistent for the court to state that Augustine cost the estate a hundred thousand dollars in regard to the pending bankruptcy, because the parties knew they had to litigate their disputes somewhere. One may disapprove of Augustine’s all-or-nothing litigation approach, but as even the court acknowledged, serious issues existed, and have never been decided, concerning the proper disbursement of the disgorgement assets among shareholders and creditors.
Because the court’s findings that allegedly justify equitable subordination of Augustine’s claim are not supported in the record, I would hold them clearly erroneous and would vacate the judgment and remand for reconsideration.
This does not mean that Augustine would succeed in its contention that, as a creditor of Great White, its claim is entitled to full priority over the shareholders’ securities fraud claims. The general rule, as the majority opinion notes, affords both latitude and deference to a receiver appointed at the SEC’s behest. It is an interesting and apparently novel question whether such a receivership can, in the exercise of “equitable” powers, wholly ignore the state law of priorities in the winding-up of a corporation. Cf. FDIC v. Meyer, 510 U.S. 471, 486, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994)(refusing to create direct action for damages not found in federal law).[2] Perhaps this ultimate issue would not have been reached in this case, as the disgorgement estate, made up largely of assets obtained from Smith, the chief promoter of the scheme, might be viewed in part as restoring losses to people whom Smith had personally defrauded. Nevertheless, Augustine, like other creditors of Great White whose claims the Agent settled, ought to have received a place at the table,
1 respectfully dissent

. On the docket sheet, the Court's Record entries 273 (3/4/02) and 291 (4/8/02) specifically reference the productive, helpful status conferences on the bankruptcy and "all the helpful and persuasive comments and suggestions made by [inter alia] counsel for Augustine Docket #291 indicates the difficult issues raised by the bankruptcy and its "unique” nature and "the importance of this case to Great White's creditors The court "continues to appreciate the parties' assistance and cooperation

. I agree with the majority that bankruptcy law priorities have no further applicability here following abstention,