NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3781
_____

KENNETH J. TAGGART,
                                        Appellant

v.

GMAC MORTGAGE, LLC; UNITED STATES OF AMERICA;
DEPARTMENT OF HOUSING & URBAN DEVELOPMENT (HUD);
THE FEDERAL HOUSING ADMINISTRATION (FHA); DOES

_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-12-cv-00415)
District Judge: Honorable J. William Ditter, Jr.
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 20, 2014

Before: AMBRO, SCIRICA, and ROTH, <u>Circuit Judges</u>

(Filed: January 30, 2015)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Kenneth Taggart appeals the District Court's orders dismissing his amended complaint and granting summary judgment in favor of defendants, the United States, the Department of Housing and Urban Development ("HUD"), and the Federal Housing Administration ("FHA") (collectively, "the Government"). We will affirm.

**I.**

The following undisputed facts were set out in the District Court's Memorandum. Taggart was an appraiser of properties for both FHA-insured and non-FHA-insured mortgages. HUD regulations permit only appraisers on HUD's "Appraiser Roster" to appraise "property that is to be the security for an FHA-insured single family mortgage." 24 C.F.R. § 200.200(a). To be eligible for placement on the Appraiser Roster, an appraiser must both (1) be state-certified and (2) not appear on any of three lists, including HUD's Credit Alert Verification Reporting System ("CAVRS"). *Id.* § 200.202(b).

Taggart was once on HUD's Appraiser Roster. He also personally held an FHA-insured mortgage serviced by GMAC Mortgage, LLC ("GMAC"). Taggart and GMAC disagreed about the payments Taggart owed, and as a result of Taggart's failure to pay what GMAC demanded, GMAC reported through CAVRS that Taggart was in default and initiated a foreclosure action in state court. In response to the CAVRS report, on

January 27, 2010, HUD removed Taggart from the Appraiser Roster, admittedly without following proper removal procedures.[1]

After Taggart filed the present action, HUD attempted to remedy its earlier mistake by rescinding his removal and reinstating him to the Appraiser Roster. HUD sent Taggart a letter on April 5, 2012, "reinstat[ing Taggart] to active status on the FHA Appraiser Roster, effective immediately," and informing him that it intended to initiate removal proceedings because he was still listed on CAVRS. On April 12, 2012, HUD re-sent a nearly identical letter fixing May 2, 2012, as the date by which Taggart could "submit a written response appealing the proposed removal and/or requesting a conference." Taggart wrote back four days later requesting a conference, demanding a jury trial, and asking several questions about the conference. HUD responded to some of these inquiries on May 10, 2012, and it offered May 14 or May 17 as potential conference dates.

Although a HUD official notified Taggart by e-mail on May 14, 2012, that the conference would "not [be] a formal hearing nor a jury trial," and Taggart renewed his objection, he attended the hour-long conference at HUD's office on May 17, 2012, presided over by Anthony Triolo, a Supervisory Housing Program Specialist at HUD. Taggart brought along a court reporter who transcribed the proceedings. On June 14, 2012, Triolo sent Taggart a letter removing him from the Appraiser Roster on the

---

[1] According to HUD regulations, an appraiser may be removed "from the Appraiser Roster for cause," 24 C.F.R. § 200.204(a), which includes the "[f]ailure to maintain eligibility requirements," *id.* § 200.204(a)(1)(vii). HUD regulations define the procedures the agency must follow to remove an appraiser for cause. *See id.* § 200.204(a)(2).

grounds that his "inclusion in the [CAVRS] system render[ed him] ineligible." Although "during [the] conference . . . [Taggart] made allegations regarding fraudulent foreclosure documents filed . . . by . . . GMAC," Triolo found that Taggart "offered no testimony or documentation to support [those] allegations." Triolo wrote that he had used Neighborhood Watch, an FHA program, to verify that Taggart was 39 months in default and owed in excess of $162,000.00.

Taggart filed this suit *pro se* on January 20, 2012 (he was later represented in the District Court by counsel, as he is here), and filed the final amended complaint on March 22, 2012, alleging 16 counts against the Government. On the Government's Federal Rule of Civil Procedure 12(b)(6) motion, the District Court on November 26, 2012, dismissed all of Taggart's claims, "with the exception of Taggart's due process claim for equitable relief based on the inadequacy of his conference with HUD." At least four of the dismissed claims sought damages from the Government and were dismissed as barred by sovereign immunity.

The Government, having not initially addressed the merits of the due process claim, moved again to dismiss this remaining claim, and the District Court heard counseled argument and, under Federal Rule of Civil Procedure 12(d), converted the motion to one for summary judgment. After accepting additional briefs and exhibits, the court granted summary judgment on the ground that "Taggart was given a full and fair opportunity to show he should not have been removed from the Appraiser Roster. Because Taggart received all the process he was due, HUD's decision was not arbitrary and capricious, and the federal defendants are entitled to summary judgment." Taggart

4

filed a timely appeal.

## II.

Our review of the District Court's grant of summary judgment is plenary. *Miller v. Eichelay Eng'rs*, 886 F.2d 30, 35 (3d Cir. 1989). Our review of the District Court's dismissal of the claims for damages is also plenary. *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010).[2]

## III.

Taggart challenges, first, the District Court's conclusion that he was afforded due process in granting summary judgment and, second, the Court's dismissal of his "claim for damages" arising from "HUD's admitted two-year defective termination."[3]

## A.

Taggart contends the District Court erred in finding that HUD had afforded him due process because the process he received was mere "pretext." He raises three lines of argument. First, "an adversarial, counseled true hearing [was] required (with burdens of proof and a neutral decision-maker)." In the alternative, he argues, under the Supreme Court's due process balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), he did not receive adequate process. As his demand for a "true hearing"—which is simply a statement of what process was due—is part of the *Mathews* analysis rather than an "alternative," we will address both arguments together. Finally, he appears to argue

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

[3] As best we can tell, this is the only portion of the November 26, 2012, order that Taggart appeals.

throughout that HUD's decision was arbitrary or capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## 1.

In order to determine what process is due in a given situation involving employment-based property rights, courts look to the test the Supreme Court laid down in *Mathews*, which asks courts to balance "the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542-43 (1985) (citing *Mathews*, 424 U.S. at 335). The District Court applied this test and determined that because placement on the Appraiser Roster "neither guarantees income nor precludes other employment," only "minimal safeguards" are required.  Next, because the procedures in place allow the individual an opportunity to present evidence at an in-person, pre-removal conference, the court found that "[a]dditional procedures would be of little or no value." Finally, the court found that "it is important for the government to have an efficient procedure for removing poorly performing appraisers or those who do not comply with HUD's eligibility requirements." Taggart challenges all of these determinations.

We believe that *Loudermill* answers the question before us.  There, the Supreme Court held that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to

present his side of the story." *Loudermill*, 470 U.S. at 546.[4] That is, "one essential component of due process [is] a pretermination opportunity to respond." *McDaniels v. Flick*, 59 F.3d 446, 454 (3d Cir. 1995). "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Loudermill*, 470 U.S. at 545 (quoting *Mathews*, 424 U.S. at 343).

Here, Taggart received written notice of the charges against him and an explanation of HUD's evidence via HUD's April 5 and 12, 2012, letters. As the District Court noted, although "only 4 or 7 days separated HUD's notification of dates and the proposed conference dates," "more than 30 days separated the initial notices and the conference date" and "Taggart was aware of the issue—his alleged default—for over two years"—because he had been litigating it in the state foreclosure proceedings since 2009 and had been previously removed from the Roster for the same reason in 2010. Taggart asserts, however, that had he had more time, and counsel,[5] he would have been able to produce evidence that GMAC's report was in error. We think the District Court correctly found that Taggart did not show that any additional time, either before or during the conference, would have helped him to produce additional evidence and thus to reduce the potential for error in these proceedings.

---

[4] Even assuming Taggart is correct that the significance of his property interest was understated by the District Court, he received all the process that he was due under the more taxing standard set out by *Loudermill*.

[5] In fact, the record makes clear that Taggart was permitted to bring counsel—HUD's May 10, 2012 letter explained that Taggart or his "designated representative" could appear.

7

Taggart also received "an opportunity to present his side of the story" at the May 17 conference. *Loudermill*, 470 U.S. at 546. Taggart cites *Bell v. Burson*, 402 U.S. 535 (1971), in support of his proposition that the District Court "fail[ed] to substantively consider that the process afforded was inherently defective: CAVRS reporting equals termination regardless of error (to wit, it is robotic)." *Bell* stands for the proposition that where deprivation of a right cognizable under due process is conditioned on a certain factor, the government must provide an opportunity for "consideration of that factor in its prior hearing." *Bell*, 402 U.S. at 541. Notwithstanding Taggart's assertions to the contrary, HUD *did* "provide a forum for the determination of the question" at the heart of its noneligibility determination—his placement on the CAVRS list. *Id.* at 542. Before the conference, HUD's May 10, 2012, letter informed Taggart that he would "be afforded an opportunity to explain why [he] should not be removed from the FHA Appraiser Roster, and given the opportunity to provide support for that proposition," including any documentation he might wish to present. At the conference, Triolo repeatedly assured Taggart that he could rebut GMAC's CAVRS report. But "[n]ot once did Taggart offer to present some evidence or testimony and [have] that request [be] denied by HUD." We cannot therefore say that HUD in any way prevented Taggart from having a meaningful opportunity to present his side of the story.

To the extent Taggart raises other arguments that he was not afforded due process, we think the District Court properly addressed and rejected them. In sum, we conclude that Taggart received all the process he was due.

**2.**

8

Next, HUD's decision was not arbitrary or capricious within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), as Taggart appears to suggest. Though it is not clear that Taggart has properly raised this issue on appeal, we note that arbitrary and capricious review of agency action requires review only of "whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) (citations omitted). We think it readily apparent that HUD satisfied this deferential standard.

As described above, Triolo's June 14, 2012, letter to Taggart informed him of the reason for his removal from the Appraiser Roster. As Triolo explained, during the conference, Taggart "alleged that [he was] improperly placed [on CAVRS]; however, [he] offered no testimony or documentation in support of that proposition. Bald assertions without foundation will not suffice." Triolo therefore accepted that Taggart was in default and appropriately on CAVRS. Because HUD's regulations permitted it to remove an individual from the Appraiser Roster if listed on CAVRS, and, as the District Court noted, because Taggart received all the process he was due throughout the removal process, it cannot be said that HUD's determination was arbitrary and capricious.

**B.**

Finally, Taggart argues the District Court erred in "fail[ing] to address HUD's admitted two-year defective termination . . . giving rise to [his] claim for damages." To the contrary, the District Court addressed all of Taggart's multiple damages claims and correctly found them barred by sovereign immunity in its November 26, 2012, order.

9

As the District Court observed, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), even when those claims are constitutional in nature, *see e.g.*, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 410 (1971) (Harlan, J., concurring in the judgment). Taggart cannot proceed under the Federal Tort Claims Act because, even when his claims against HUD and the FHA are properly construed as against the United States,[6] they are patently not claims for which the government has waived sovereign immunity, as the District Court thoroughly explained.

Accordingly, the District Court addressed Taggart's claims for damages and correctly dismissed them.

**IV.**

Because we see no error with the District Court's judgments, we will affirm.

---

[6] *See* 28 U.S.C. § 2679(a) ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.").