09-0657-ag
Watson v. Holder

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: May 17, 2011                                        Decided: May 31, 2011)

Docket No. 09-0657-ag

DAVINO H. WATSON,

*Petitioner*,

v.

ERIC H. HOLDER, JR., United States Attorney General,

*Respondent*.

Before: CABRANES, STRAUB, and RAGGI, *Circuit Judges*.

RICHARD W. MARK (S. Scott Roehm and Rene A. Kathawala, *of counsel*), Orrick, Herrington & Sutcliffe LLP, New York, NY, *for Petitioner*.

DANA M. CAMILLERI, Trial Attorney (Tony West, Assistant Attorney General, Civil Division, and Ernesto H. Molina, Jr., Assistant Director, *on the brief*), Office of Immigration Litigation, Civil Division, Department of Justice, Washington, DC, *for Respondent*.

PER CURIAM:

The question presented for our review is whether petitioner Davino H. Watson has been "legitimated" under Jamaican law within the meaning of 8 U.S.C. § 1101(c)(1) even though his parents never married, with the result that he has obtained derivative citizenship as a consequence of the naturalization of his father.

Watson, a native of Jamaica, seeks review of a February 5, 2009, order of the Board of Immigration Appeals ("BIA"), affirming the November 13, 2008, decision of Immigration Judge ("IJ") John B. Reid, which denied Watson's motion to terminate the removal proceedings brought against him on the grounds that Watson had not derived U.S. citizenship through the naturalization of his father. *In re Watson*, No. A046 633 823 (BIA Feb. 5, 2009), *aff'g* No. A046 633 823 (Immig. Ct. Batavia, N.Y. Nov. 13, 2008).

**BACKGROUND**

Watson is a 26-year-old native of Jamaica who entered the United States on August 4, 1998, as a lawful permanent resident to live with his father and step-mother (the latter was an American citizen). On November 23, 2004, Watson was convicted of attempted robbery in the second degree in New York State court. Roughly three years later, in September 2007, Watson was convicted in New York State court for the attempted sale of cocaine. As a result of these convictions, the Department of Homeland Security initiated removal proceedings against Watson in 2008.

Appearing before the IJ in August 2008, Watson acknowledged his previous convictions, but denied that he was a citizen of Jamaica. Watson claimed that he had obtained derivative American citizenship through his father, who was naturalized in 2002 when Watson was 17 years old. The IJ continued the proceedings in order to allow Watson to pursue his claim to American citizenship with U.S. Citizenship and Immigration Services. When these efforts were rebuffed, the matter returned to

the IJ. Watson pressed his argument that he was entitled to American citizenship because he was a minor, living with his father in the United States, when his father became a citizen of the United States.

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1431(a), "[a] child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled: (1) [a]t least one parent of the child is a citizen of the United States, whether by birth or by naturalization[;] (2) [t]he child is under the age of eighteen years[; and] (3) [t]he child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence." For purposes of these requirements, Section 1101(c)(1) defines a "child" as:

> an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere . . . if such legitimation . . . takes place before the child reaches the age of 16 years . . . and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.

8 U.S.C. § 1101(c)(1).

The only issue in dispute between the parties is whether Watson qualifies as a "child" (of his American father) within the meaning of this statutory provision. The Attorney General has argued that Watson is not a child because his biological parents never married, making him illegitimate under Jamaican law; in the alternative, the Attorney General claims that even if Watson has been considered "legitimate" since birth under the applicable law (here, Jamaica), he still does not qualify as a child under § 1101(c)(1) because he was not in the legal custody of his father at birth.

On November 13, 2008, the IJ issued an oral decision finding that Watson had failed to demonstrate that he had derived citizenship from his father. The IJ's decision was principally predicated on two separate holdings: (1) the burden is on Watson to establish that he is indeed an

3

American citizen, and (2) previous precedent of the BIA, specifically *Matter of Hines*, 24 I. & N. Dec. 544, 547 (BIA 2008), establishes that children born out of wedlock—as Watson concedes he was—are generally not treated as "legitimate" under Jamaican law, meaning that Watson cannot be considered the "child" of his American father for purposes of § 1101(c)(1).

The BIA agreed with the IJ's determination that Watson had not been legitimated under Jamaican law. The BIA also held, in the alternative, that even if Watson were to be considered legitimate under Jamaican law, he still would be ineligible for derivative citizenship because he failed to establish that he was in his father's legal custody at the time of his legitimation (the date his birth certificate was signed, according to Watson). Watson now petitions for our review of the BIA's decision holding that he is an alien subject to removal.

**DISCUSSION**

The instant case presents two central issues for our review (1) what is the precise definition of "legitimated" under § 1101(c)(1), and (2) what does Jamaican law have to say about the concept of legitimation. Because we remain unsure as to the exact definition of "legitimated" that the BIA has settled upon, that issue merits our primary focus.

*(1) Legitimacy*

For many years the BIA appears to have been of the view that the concept of legitimacy turned on the substantive legal rights conferred by applicable law rather than on mere labels codified by statute. The 1981 case of *Matter of Clahar*, 18 I. & N. Dec. 1 (BIA 1981), is most instructive here. *Matter of Clahar* is the first case in which the BIA held that the Jamaican Status of Children Act of 1976 had abolished the concept of illegitimacy in that country. In reaching this decision, the BIA found particularly noteworthy Jamaica's representation that, as a result of the Status of Children Act, "'the legal duties and obligations of a father towards a child born out of wedlock are in all significant respects the same as those of a child born in wedlock.'" *Id.* at 5 (quoting a memorandum provided). But in

4

2008, after 27 years, the BIA explicitly overruled *Matter of Clahar* in its decision in *Matter of Hines*. In *Matter of Hines*—the case that controlled the BIA's decision in the instant matter—the BIA explained that "although the Jamaican Status of Children Act of 1976 eliminated all legal distinctions between 'legitimate' and 'illegitimate' children and provided a mechanism by which the father of a child born out of wedlock could acknowledge paternity, section 2 of the Jamaican Legitimation Act has remained in effect and continues to provide that a child born out of wedlock can be 'legitimated' only by the subsequent marriage of his or her parents." *Matter of Hines*, 24 I. & N. at 547-48.

To be sure, an agency does not forfeit *Chevron* deference merely because it has reconsidered a previous legal interpretation. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) ("Agency inconsistency is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework. Unexplained inconsistency is, at most, a reason for holding an interpretation to be an arbitrary and capricious change from agency practice under the Administrative Procedure Act."). But in reviewing the positions the BIA has taken on the "legitimation" question, we have two lingering concerns that we think ought to be resolved by the agency in the first instance.

First, we remain unsure as to the precise definition the BIA has adopted for determining whether a "child" has been "legitimated" under the law of a particular jurisdiction for purposes of § 1101(c)(1). For instance, does the BIA recognize a difference between legitimate and illegitimate that is purely formalistic—in other words, where the law in question retains the label of "legitimate" for children born to married parents, but ensures that "illegitimate" children are treated *exactly* the same as their legitimate counterparts—or is some substantive discrimination in the law necessary?[1] Second, we are unclear as to the legal and/or logical basis for the BIA's interpretation.

---

[1] In this regard it is worth noting that in the pre-*Chevron* case of *Lau v. Kiley*, 563 F.2d 543 (2d Cir. 1977), we were asked to consider the proper interpretation of "child"—and "legitimated"—as used in 8 U.S.C. § 1101(b)(1), in connection with a dispute over whether petitioner was entitled to a visa preference. In relevant part, we held that "[t]he distinction [between legitimate and illegitimate children] must have some effect and must have been designed to distinguish between the two categories in order that they have different rights or obligations." *Id.* at 548.

Accordingly, on remand, the BIA is instructed to (1) clarify precisely how it interprets the concept of "legitimation" as it is used in § 1101(c)(1), and (2) justify how it arrived at that particular interpretation. Once that is accomplished, the BIA should again analyze and explain how its understanding of "legitimation" applies to Jamaican law and the facts of this case. Depending on the outcome of these various steps, the BIA may wish to take the opportunity of this remand to develop the record on other outstanding issues that may bear on the merits of this matter. In particular, the BIA may wish to explore whether Watson was "in the legal custody" of his father at any time during Watson's stay in Jamaica. It might also be helpful for the BIA to seek further guidance on the interplay between the Legitimation Act of 1909 and the Status of Children Act of 1976 in Jamaican law.

**CONCLUSION**

For the foregoing reasons, we **GRANT** the petition for review and **REMAND** the cause to the BIA for proceedings consistent with this opinion. If and when petitioner seeks review of BIA determinations following this remand, the cause shall be referred to this panel. *See Butt v. Gonzales*, 500 F.3d 130, 137 (2d Cir. 2007); *United States v. Jacobson*, 15 F.3d 19, 21-22 (2d Cir. 1994).

The mandate shall issue forthwith.