GABRIEL W. GORENSTEIN, United States Magistrate Judge:
Plaintiff Andre Everton Grant brings this action against the United States of America, alleging that the United States, through its agencies the U.S. Citizenship and Immigration Services ("USCIS") and Immigration and Customs Enforcement ("ICE"), subjected him to various torts and violated his constitutional rights. Defendant United States now moves to dismiss Grant's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] For the reasons set forth below, the government's motion should be granted.
*852 I. BACKGROUND
A. Facts
The following facts are taken from Grant's complaint and the documents attached thereto unless otherwise noted.
Grant was born in Jamaica on October 11, 1985, to Everton Grant and Pamella Williams. See Notice of Decision (N-600), dated June 13, 2011 (annexed as Ex. A to Complaint for Damages Under the Federal Tort Claims Act, undated, filed Mar. 16, 2017 (Docket # 1) ("Compl.") ) ("N-600 Decision"), at 101. Grant's parents were not married when he was born, id., but Grant's father added his name to Grant's birth certificate in 1989. See Decision in Response to Application for Certificate of Citizenship under Section 320 of the Immigration and Nationality Act; 8 U.S.C. § 1431, dated Mar. 25, 2014 (annexed as Ex. G to Compl.) ("AAO Decision"), at 5. Grant was admitted to the United States as a lawful permanent resident on June 4, 1992. See Decision Re: Motion to Reopen and Reconsider, undated (annexed as Ex. E to Compl.), at *30-31.[2] Grant's father became a naturalized United States citizen on December 12, 1997, although there is no evidence that Grant's mother was ever a citizen. AAO Decision at 2.
In 2010, Grant was convicted of multiple felonies in the United States District Court for the District of Maryland, and was sentenced on October 18, 2010, to 48 months' imprisonment. See Memorandum Report and Recommendation, dated Mar. 26, 2014 (annexed as Ex. H to Compl.); see also Compl. ¶ 1. On March 29, 2011, while Grant was serving his sentence, ICE lodged an immigration detainer against him. See Compl. ¶ 2. As a result, Grant was transferred to Moshannon Valley Correctional Center, a private corrections facility used to hold inmates subject to immigration detainers. Id. Upon arriving at Moshannon, ICE interviewed Grant to determine whether he was subject to deportation. Id. ¶ 3. During that interview, Grant stated that he was a United States citizen. Id. ICE representatives instructed Grant to file an N-600 application for a certificate of citizenship, which he did and submitted on May 31, 2011. See id. ¶ 4.
On June 13, 2011, USCIS issued a decision denying Grant's N-600 application. See id. ¶ 5; see also N-600 Decision at 102. The decision noted that Grant was claiming eligibility for a certificate of United States citizenship through his naturalized father (i.e., derivative citizenship). See N-600 Decision at 101. USCIS found that under section 320 of the Immigration and Nationality Act, 8 U.S.C. § 1431, as well as section 101(c) of that Act, 8 U.S.C. § 1101(c), derivative citizenship could be granted to a child born out of wedlock only if that child was legitimated, and "under Jamaican law the sole means of legitimating a child born out of wedlock is the marriage of the child's natural parents," see N-600 Decision at 101-02. Because Grant's parents were never married, he was never legitimated and thus could not establish his eligibility for citizenship. Id. at 102.
Although this opinion was issued on June 13, 2011, Grant did not receive a copy until December 2011. Compl. ¶ 5. Immediately upon receiving that copy, Grant filed an appeal with USCIS. Id. Grant received no response to that appeal. Id. He then filed a new N-600 application, which was denied in July 2012. Id. At that time, USCIS told him to file a motion to reopen and reconsider his case because the time to appeal had expired. Id.
In August 2012, Grant filed a request with USCIS pursuant to the Freedom of *853 Information Act regarding his case. See id. ¶ 6. In response, Grant received documents indicating that USCIS's initial attempt to send Grant his N-600 decision by mail was returned to the sender for lack of postage. See id. With this information, Grant filed an application with USCIS alleging that he was not afforded his right to appeal due to USCIS's failure to ensure Grant timely received its N-600 decision. Id. Grant received no response to this application. Id. Following this and other appeals to USCIS, Grant sued USCIS in the United States District Court for the Western District of Pennsylvania "under The Mandamus ... and Declaratory Judgment Act" over his immigration status. See id. ¶ 10; Memorandum Order, Grant v. USCIS, dated July 13, 2013 (annexed as Ex. D to Compl.).
In May 2012, ICE initiated removal proceedings against Grant. Compl. ¶ 7. A hearing was held on July 17, 2012, during which the Immigration Judge stated that he believed that Grant "may be a citizen." Id. ICE removed its immigration detainer on December 14, 2012. Id. ¶ 8. Another hearing was held on February 19, 2013, during which the government made a motion to administratively close the proceeding against Grant on the ground that a case relevant to Grant's citizenship status, Watson v. Holder, 643 F.3d 367 (2d Cir. 2011), had recently been remanded by the Second Circuit to the Board of Immigration Appeals for further determinations. Compl. ¶ 8. Accordingly, the government stated that no decision should be issued in Grant's case until the Board of Immigration Appeals ruled in the remanded Watson case. See id. The Immigration Judge granted the motion and closed the proceedings. See id.
After this hearing, Grant requested the Bureau of Prisons transfer him to a community confinement center. Id. ¶ 9. This request was denied because even though Grant's ICE detainer had been dislodged, it was still possible that he could be deported or supervised by ICE on release. Id. Grant filed a petition for a writ of habeas corpus in federal district court challenging this decision, and the court upheld it. See Summary Report and Recommendation, dated Dec. 11, 2013 (annexed as Ex. C to Compl.); Memorandum and Order, Grant v. Wigen, No. 13 Civ. 210 (W.D. Pa. Jan. 16, 2014) (Docket # 11) (adopting Report and Recommendation).
The Board of Immigration Appeals issued a decision in the remanded Watson case on January 24, 2013, finding that a child born in Jamaica is legitimated when the child's father acknowledges the child's birth on his or her birth certificate. See AAO Decision at 4-5. On December 6, 2013, ICE lodged another immigration detainer on Grant. Compl. ¶ 11; see also Immigration Detainer-Notice of Action, dated Dec. 6, 2013 (annexed as Ex. F to Compl.). This detainer was withdrawn on December 12, 2013, and Grant was released from custody on December 13, 2013. See id. ¶ 11. However, in February 2014, ICE again initiated removal proceedings against Grant. Id. ¶ 12. Hearings in this proceeding were adjourned pending the decision of an "appeal" that Grant had pending with USCIS's Administrative Appeals Office ("AAO"). Id.; see also AAO Decision at 1. Though unclear from Grant's complaint, this "appeal" appears to have been an appeal from a motion to reopen and reconsider USCIS's denial of Grant's initial N-600 application. See AAO Decision at 2 (noting that USCIS "denied the Application for Certificate of Citizenship (Form N-600) and reaffirmed that decision when deciding the applicant's subsequent motion to reopen and reconsider. The matter is now before the ... [ ]AAO[ ] on appeal.").
*854 On March 24, 2014, the AAO rendered a decision in that appeal and determined that Grant was a United States citizen. See id. ¶ 13; see also AAO Decision at 6. The AAO noted that due to changes in the interpretation of "legitimation" that were discussed in the remanded Watson case, and because Grant's father added his name to Grant's birth certificate in 1989, Grant was a legitimated child of his father, and derived citizenship as a matter of law from his father. AAO Decision at 5. Grant received his Certificate of Citizenship on April 16, 2014. Compl. ¶ 14.
B. Procedural History
Grant alleges that he sought to amend his complaint in his federal lawsuit against USCIS in the United States District Court for the Western District of Pennsylvania to seek money damages against USCIS, but was "instructed by the court to file a claim with the agency before the court can make a determination." Id. ¶ 15. Grant alleges that he filed a claim with USCIS on June 5, 2014, but received no response within six months. Id. As explained further below, both USCIS and ICE deny having any record of receiving such a claim. See Luong Decl. ¶ 3; Tanke Decl ¶ 2. On March 16, 2017, Grant filed the complaint in this action alleging that the government acted improperly in denying that he was a citizen. See Compl. ¶¶ 16-25. On October 30, 2017, the United States filed this motion to dismiss. See Def. Not.
On April 13, 2018, after this motion was fully briefed, the Court gave Grant leave to file any materials demonstrating that he exhausted his administrative remedies for the claims he asserts in this action. See Order, dated Apr. 13, 2018 (Docket # 25). The Court first gave Grant a deadline of April 27, 2018, to do so, id. at 1, but Grant did not make such a filing. On May 4, 2018, the Court sua sponte extended this deadline to May 25, 2018. See Order, dated May 4, 2018 (Docket # 26). Grant again failed submit any responsive documents.
II. APPLICABLE LAW
The United States moves to dismiss pursuant to both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). See Def. Not. Because we find that no subject matter jurisdiction exists, we describe only the standard governing a motion to dismiss pursuant to Rule 12(b)(1).
"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). A case must be dismissed for lack of subject matter jurisdiction under Federal Rule 12(b)(1)"when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1) ). The plaintiff ultimately carries "the burden of proving by a preponderance of the evidence that [jurisdiction] exists." Id. When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). Where jurisdictional facts are disputed, however, "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks omitted) (quoting LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999) ).
III. DISCUSSION
Grant's complaint asserts that the United States, through USCIS and ICE, was *855 "negligent" when it: (1) denied Grant's request for derivative citizenship; (2) lodged and withdrew immigration detainers on Grant; (3) caused the death of Grant's son, who died in Jamaica of a disease that Grant asserts was curable in the United States; (4) failed to pay for postage when sending Grant its initial N-600 Decision; (5) denied Grant's citizenship and reopening removal proceedings after Watson had been decided; (6) failed to properly interpret United States and Jamaican law; (7) violated Grant's "rights as a United States citizen to seek gainful employment and or go to school"; and (8) failed to follow the "Hayes Memorandum," annexed as Exhibit J to the Complaint. Compl. ¶¶ 16-23, 25. Grant also argues that the United States violated his "Constitutional right to liberty (4th amendment)." Id. ¶ 24. We will examine Grant's negligence claims before turning to his claimed constitutional violation.
A. Claims Under the Federal Tort Claims Act
"The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (citations omitted). "[T]he existence of [such] consent is a prerequisite for jurisdiction" over claims against the United States. United States v. Navajo Nation, 537 U.S. 488, 502, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003) (internal quotation marks omitted) (quoting United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ). The sovereign immunity doctrine applies equally to agencies of the United States. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).
Congress has given consent to sue the United States under certain circumstances by enacting the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 - 80 ("FTCA"). It provides in relevant part that
the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
28 U.S.C. § 1346(b)(1). The FTCA thus "waive[s] the sovereign immunity of the United States for certain torts committed by federal employees." F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).[3]
Before bringing suit under the FTCA, a plaintiff must satisfy the statute's exhaustion requirement. Pursuant to this requirement, "[a]n action shall not be instituted" under the FTCA "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim *856 shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a) ; accord McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). This requirement may be excused by the "failure of an agency to make final disposition of a claim within six months after it is filed," in which case the agency's failure to respond will "be deemed a final denial of the claim." 28 U.S.C. § 2675(a).
As the Second Circuit has held, "[c]ompliance with the conditions under which the government has agreed to waive sovereign immunity is necessary for subject matter jurisdiction to exist." Williams v. United States, 947 F.2d 37, 39 (2d Cir. 1991) (citation omitted). Thus, the FTCA's exhaustion requirement is "jurisdictional and cannot be waived." Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) ; accord Shariff v. United States, 689 F. App'x 18, 20 (2d Cir. 2017) (summary order); see also Williams v. United States, 947 F.2d 37, 39 (2d Cir. 1991) ("[C]ompliance with the conditions under which the government has agreed to waive sovereign immunity is necessary for subject matter jurisdiction to exist.") (citation omitted).[4]
Here, the government argues that this Court lacks subject matter jurisdiction to hear Grant's negligence claims because Grant has failed show that he exhausted his administrative remedies. Def. Mem. at 6-7. As previously noted, "the court has the power and obligation to decide issues of fact"-such as the question of whether an administrative claim was filed-"by reference to evidence outside the pleadings, such as affidavits." APWU, 343 F.3d at 627 (internal quotation marks omitted) (quoting LeBlanc, 198 F.3d at 356 ).
In his unsworn complaint, Grant asserts that he "filed" a claim with USCIS on June 5, 2014, and that USCIS failed to respond to that claim within six months. Compl. ¶ 15. Similarly, in his memorandum in opposition to this motion, Grant states that he sent his claim to both the USCIS field office in Philipsburg, Pennsylvania, and the Department of Homeland Security ("DHS"). Pl. Mem. at *3. However, these allegations are partially undermined by defendant's (similarly unsworn) assertion that USCIS maintains no field office in Philipsburg, Pennsylvania. See Def. Reply at 2.[5] Grant does not explain to what address or office of DHS he sent his claim.
*857 Grant's unsworn assertion that he exhausted his claims is further undermined by his failure to produce any corroborating documentation. Grant submits no copy of his claim and does not provide a sworn statement that he sent any claim to USCIS or DHS. Recognizing this defect, Grant stated in his opposition memorandum that "[i]f the Court allows me I would like to enter records from Stamps.com and Individual affidavits to show that I submitted the Government with this Claim." Pl. Mem. at *3. The Court issued two separate orders inviting Grant to submit such documentation. See Order, dated May 4, 2018 (Docket # 26); Order, dated Apr. 13, 2018 (Docket # 25). Nonetheless, Grant failed to respond to these orders.
This lack of evidence by itself would cause the Court to find that Grant had failed to meet his burden that he had timely submitted a claim form. Makarova, 201 F.3d at 113 (plaintiff has "the burden of proving by a preponderance of the evidence that [jurisdiction] exists"). We have more in this case, however. The government has provided strong evidence that no claim was ever presented. Quan K. Luong, the Deputy Chief in the Commercial and Administrative Law Division in the Office of Chief Counsel for USCIS, has submitted a sworn statement declaring "I have full access to and regularly utilize all USCIS records that are maintained on each administrative tort claim submitted for adjudication to USCIS pursuant to" the FTCA. Luong Decl. ¶¶ 1-2. Luong searched "all USCIS records of administrative tort claims submitted for adjudication for evidence of an administrative claim filed by, or on behalf of, Andre Everton Grant and no such claim was discovered." Id. ¶ 3. Likewise, Anne M. Tanke, an Associate Legal Advisor for the Office of the Principal Legal Advisor in ICE, has declared in a sworn statement that her "office maintains a database of administrative FTCA claims submitted to ICE," that she has "searched the database," and that she "found no records of any such claim by Andre Everton Grant." Tanke Decl. ¶¶ 1-3.
In sum, the Court cannot find that Grant has met his burden of showing that an administrative claim was presented to any government agency. Accordingly, the United States's motion to dismiss Grant's claims arising under the FTCA for lack of subject matter jurisdiction should be granted.[6]
B. Constitutional Claims
Grant also asserts in his complaint that the "USCIS violated my Constitutional right to liberty (4th amendment)." Compl. ¶ 24. This claim differs from Grant's negligence claims because it asserts a right to relief under the Constitution instead of state tort law. The FTCA waives the United States's sovereign immunity for claims only "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, the United States has not waived its immunity "with respect to claims that its employees *858 have committed constitutional torts." Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994) ; accord Meyer, 510 U.S. at 477-78, 114 S.Ct. 996 ; Spinale v. U.S. Dep't of Agric., 621 F.Supp.2d 112, 120 (S.D.N.Y.), aff'd, Spinale v. U.S. Dep't of Agr., 356 F. App'x 465 (2d Cir. 2009). Because, as already noted, "the United States may not be sued without its consent and ... the existence of consent is a prerequisite for jurisdiction," Grant's claim that the United States violated his constitutional rights is barred by the doctrine of sovereign immunity, and this Court lacks subject matter jurisdiction over this claim. See Mitchell, 463 U.S. at 212, 103 S.Ct. 2961.[7]
IV. CONCLUSION
The United States's motion to dismiss (Docket # 13) should be granted, and Grant's complaint should be dismissed for lack of subject matter jurisdiction. "[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice." Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999). Accordingly, Grant's complaint should be dismissed without prejudice.
PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION
Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Paul G. Gardephe at 40 Foley Square, New York, New York 10007. Any request for an extension of time to file objections or responses must be directed to Judge Gardephe. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1) ; Fed. R. Civ. P. 72 ; Fed. R. Civ. P. 6(a), 6(b), 6(d) ; Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis. Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

See Notice of Motion to Dismiss, dated Oct. 30, 2017 (Docket # 13) ("Def. Not."); Declaration of Quan K. Luong, dated Oct. 26, 2017 (Docket # 15) ("Luong Decl."); Declaration of Ann M. Tanke, dated Oct. 19, 2017 (Docket # 16) ("Tanke Decl."); Memorandum of Law in Support of Defendant's Motion to Dismiss, dated Oct. 30, 2017 (Docket # 18) ("Def. Mem."); "Plaintiffs' [sic] Response to Defendants' [sic] Motion to Dismiss," dated Nov. 13, 2017 (Docket # 21) ("Pl. Mem."); Reply Memorandum of Law in Support of Defendant's Motion to Dismiss, dated Jan. 12, 2018 (Docket # 22) ("Def. Reply").

Page numbers cited as "*__" refer to the pagination created by the ECF system.

Grant cites statutes other than the FTCA as the bases for his complaint, see Compl. at 1 (citing 28 U.S.C. §§ 1331, 1491, 1651, the "Federal Question Act," the "Tucker Act," and the "All Writs Act"). None of these, however, relate to suits for damages against the United States, with the exception of the Tucker Act, 28 U.S.C. § 1491. The Tucker Act has no bearing on this case, however, because the Tucker Act does not "create[ ] substantive rights; [it is] simply [a] jurisdictional provision[ ] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)." U.S. v. Navajo Nation, 556 U.S. 287, 290, 129 S.Ct. 1547, 173 L.Ed.2d 429 (2009). Grant points to no source of law allowing for damages against the United States for his claims other than the FTCA.

Although the Supreme Court recently held that compliance with the statute of limitations applicable to bringing a claim in federal court after the exhaustion of administrative remedies is not jurisdictional in nature, United States v. Kwai Fun Wong, --- U.S. ----, 135 S.Ct. 1625, 1633, 191 L.Ed.2d 533 (2015), Kwai Fun Wong"did not address-and therefore did not disturb-the well-established principle that certain prerequisites to filing suit under the FTCA, such as exhaustion of administrative remedies, are jurisdictional in nature." Mohamed v. F.B.I., 2015 WL 6437369, at *6 (S.D.N.Y. Oct. 21, 2015) ; accord McIntosh v. United States, 2018 WL 1275119, at *6 n.6 (S.D.N.Y. Mar. 7, 2018). Indeed, even after this decision, the Second Circuit has continued to recognize that an FTCA plaintiff's failure to exhaust administrative remedies deprives federal courts of jurisdiction to hear his or her claims. Barnhill v. Terrell, 616 F. App'x 23, 25 & n.1 (2d Cir. 2015) (summary order); see also Shariff v. United States, 689 F. App'x 18, 20 (2d Cir. 2017) (summary order) ("[Plaintiff] acknowledges that he failed to exhaust those remedies and that that failure is jurisdictional.") (citing Celestine, 403 F.3d at 82 ).

The government's assertion is supported by the lack of any such field office currently being listed on USCIS's website. See Pennsylvania Field Offices, U.S. Citizenship and Immigration Services, https://www.uscis.gov/about-us/field-office/field-office-state?state=PA& topic_id=1& lang=1125 (last visited June 11, 2018).

In light of our conclusion that no administrative claim was presented, the Court need not reach the government's alternative arguments relating to subject matter jurisdiction. See Def. Mem. at 7-9 (arguing that the Court lacks subject matter jurisdiction over FTCA claims relating to removal proceedings due to 8 U.S.C. § 1252(g) ); id. at 9-10 (arguing that the Court has no subject matter jurisdiction under the FTCA to hear claims relating to the adjudication of Grant's citizenship status because there is no private analog for such claims).

We note that the remedy created by Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), is not at issue here. Bivens permits suit against a federal officer for violation of a plaintiff's constitutional rights when the officer is sued in his or her individual capacity. Robinson, 21 F.3d at 510 (Bivens action "must be brought against the federal officers involved in their individual capacities" and "will not lie against the United States absent consent."). The defendant in the instant lawsuit is the United States.