RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0244p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JOHN DANIEL JUDE, individually and in his official capacity as administrator of the estate of Melissa Jude; EMMA BURCHETT, individually and in her official capacity as administratrix of the estate of Leroy Burchett,

*Plaintiffs-Appellants*,

*v.*

COMMISSIONER OF SOCIAL SECURITY; UNITED STATES OF AMERICA,

*Defendants-Appellees*.

┐
│
│
│
│
├  No. 18-5188
│
│
│
│
┘

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 7:16-cv-00009—Karen K. Caldwell, Chief District Judge.

Argued:  October 2, 2018

Decided and Filed:  November 1, 2018

Before:  SILER, MOORE, and ROGERS, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:**  Ned Pillersdorf, PILLERSDORF, DEROSSETT & LANE, Prestonsburg, Kentucky, for Appellants.  Thomas Pulham, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:**  Ned Pillersdorf, PILLERSDORF, DEROSSETT & LANE, Prestonsburg, Kentucky, for Appellants.  Thomas Pulham, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  Plaintiffs, administrators of the estates of their deceased spouses, appeal the district court's dismissal of their suit under the Federal Tort Claims Act ("FTCA").  They allege that the Social Security Administration ("SSA") caused the suicide deaths of their spouses by improperly notifying them of the suspension of their disability benefits and of the need to redetermine their eligibility for benefits due to suspected fraud in their applications.  The district court determined that it lacked jurisdiction to hear the claims because the Defendants' challenged conduct fell within the FTCA's discretionary function exception.  We agree with the district court that the discretionary function exception covers the challenged conduct and therefore **AFFIRM** the dismissal.

## I. BACKGROUND

Under the Social Security Act ("Act"), a person who claims entitlement to disability benefits must submit an application and provide evidence of his or her disability to the Social Security Administration.  *See* 42 U.S.C. §§ 405(a), (b)(1); 20 C.F.R. §§ 404.1520, 404.1520b.  Leroy Burchett and Melissa Jude were two Kentucky residents who suffered from serious mental illnesses involving depression.  Burchett and Jude both hired Eric Conn, a Kentucky attorney, to represent them in applying for Social Security disability benefits under the Act.  With Conn's assistance and letters from doctors with whom he was affiliated, Jude and Burchett were granted disability benefits in October 2009 and August 2010, respectively.  As it turned out, Conn's legal representation was part of a fraudulent scheme.  Conn paid four doctors to submit to the SSA fraudulent letters claiming to document the various ailments of Conn's clients.  He also bribed an administrative law judge named David Daugherty to assign Conn's clients' cases to his own docket and then to decide nearly all of those cases in favor of Conn's clients.

Plaintiffs allege that the SSA had reason to suspect that Conn was perpetrating this fraud as early as 2007 due to the reports of internal whistleblowers.  In 2011, the *Wall Street Journal* published a story about Conn's exploits, suggesting that illegal practices were behind his

success. Conn was indicted in 2016 on several criminal charges; he later pleaded guilty. Charles Andrus, the former Chief Administrative Law Judge at the Huntington, West Virginia SSA office, also pleaded guilty to retaliation against a whistleblower.

On May 18, 2015, the SSA's Appeals Council informed both Jude and Burchett via mail that the Office of the Inspector General had notified the SSA that there was reason to believe that fraud was involved in their applications for disability benefits. R. 21-3 (Jude Notice of Appeals Council Action) (Page ID #95); R. 21-4 (Burchett Notice of Appeals Council Action) (Page ID #101). The SSA told them that it was legally required to redetermine their eligibility for benefits based on available evidence of their disabilities, excluding from consideration any evidence that was suspected of being tainted by fraud. The SSA based its course of conduct on 42 U.S.C. § 1320a-8(l), which requires that "[a]s soon as the Inspector General . . . has reason to believe that fraud was involved in the application of an individual" for benefits, he "shall make available to [the SSA] information identifying the individual," unless doing so would jeopardize a criminal prosecution, and § 405(u)(1)(A), which requires the SSA Commissioner to "immediately redetermine" the individual's entitlement to benefits upon such notification from the Inspector General or upon its own suspicion that an application was based on fraud. 42 U.S.C. §§ 1320a-8(l) & 405(u)(1)(A). Jude and Burchett were invited to submit "more evidence or a statement about the facts and the law in [their] case[s] within 10 days," although the same letter informed them that they could request additional time to gather and submit evidence if the ten days were insufficient. R. 21-3 (Jude Notice of Appeals Council Action) (Page ID #97); R. 21-4 (Burchett Notice of Appeals Council Action) (Page ID #103). In separate letters the SSA also informed Jude and Burchett that their benefits were suspended effective immediately until the eligibility redeterminations took place. R. 21-5 (Jude Benefits Suspension Letter) (Page ID #107); R. 21-6 (Burchett Benefits Suspension Letter) (Page ID #109). Plaintiffs allege that around 900 other former Conn clients received similar letters detailing the procedures the SSA had selected to handle the Conn fallout.

Jude and Burchett, already sufferers of serious mental illnesses, were distressed by these notices and the immediate suspension of their benefits. Each requested additional time to gather evidence for use in the redetermination hearings. R. 21-7 (Jude Extension Request) (Page ID

#111); R. 21-9 (Burchett Extension Request) (Page ID #114).  However, about two weeks after the May SSA notices, Jude and Burchett each committed suicide.  Both had already taken their own lives by the time that the SSA notified them that their requests for additional time to gather evidence had been granted.  Around three weeks after the suspension-of-benefit letters were sent out, the SSA temporarily reinstated the benefits it had already suspended.

In June 2015, John Jude and Emma Burchett (Plaintiffs), the spouses and administrators of the estates of Melissa Jude and Leroy Burchett, respectively, filed administrative FTCA claims for wrongful death with the SSA.  R. 21-11 (Jude SSA FTCA Claim) (Page ID #116); R. 21-12 (Burchett SSA FTCA Claim) (Page ID #118).  Those claims were denied in December 2015.  R. 21-13 (Jude SSA FTCA Denial) (Page ID #120); R. 21-14 (Burchett SSA FTCA Denial) (Page ID #121).  In January 2016, Plaintiffs filed their complaint in federal district court against Carolyn Colvin in her official capacity as then-Acting Commissioner of Social Security at the SSA.[1]  In a first amended complaint Plaintiffs added the United States as an additional defendant and included additional allegations.  The complaints asserted a claim under the FTCA, 28 U.S.C. §§ 1346(b) and 2671, and a *Bivens* claim alleging procedural due process violations.[2]  Plaintiffs sought "[j]udgment against the Defendants for the Plaintiffs and their respective estates; compensation for the humiliation, pain and suffering experienced by their decedents; and lost benefits."[3]  The district court understood the claims to be challenging three distinct components of the SSA's actions:  (1) "the decision to terminate Jude and Burchett's benefits without a hearing," (2) "the decision to give them only ten days to respond to the redetermination notice," and (3) "the SSA's failure to 'immediately' redetermine their eligibility" upon its initial suspicion of fraud.  R. 37 (May 26, 2017 Dist. Ct. Order at 4) (Page ID #326).

---

[1]Nancy Berryhill has since replaced Carolyn Colvin in this position and thus is the named defendant in this suit.  *See* Fed. R. Civ. P. 25(d).

[2]Plaintiffs did not argue the *Bivens* claim on appeal, and we therefore consider it forfeited.  *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005).

[3]However, Plaintiffs' Response to Defendants' Motion to Dismiss and Plaintiffs' appellate briefing expressly deny that they seek lost benefits.  *See* R. 32-1 (Pl.'s Resp. to Def.'s Mot. to Dismiss at 7) (Page ID #308); Reply Br. of Appellants at 6.

The SSA made a fully favorable decision in February 2016 in Burchett's posthumous disability redetermination, having excluded the evidence that was tainted with suspicion of fraud. R. 21-16 (Burchett Fully Favorable Decision) (Page ID #132). Similarly, in March 2016 the SSA made a partially favorable decision in Jude's posthumous disability redetermination. R. 21-15 (Jude Partially Favorable Decision) (Page ID #123).

After Plaintiffs filed their First Amended Complaint, Defendants filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment in October 2016. R. 29 (Def.'s Mot. to Dismiss or in the Alternative Mot. for Summ. J.) (Page ID #270–72). The district court granted the Defendants' motion, concluding that the FTCA's discretionary function exception applied to preclude that claim and that the *Bivens* claim was improperly formulated. R. 37 (May 26, 2017 Dist. Ct. Order at 6–7) (Page ID #328–29). Plaintiffs filed a Motion to Alter or Amend Judgment and Order, which the district court denied. R. 39 (Mot. to Alter, or Amend J. and Order Entered on May 26, 2017) (Page ID #333); R. 45 (Feb. 5, 2018 Dist. Ct. Order) (Page ID #352). Plaintiffs filed a timely Notice of Appeal. R. 46 (Notice of Appeal) (Page ID #358).

## II. DISCUSSION

We review de novo the district court's grant of a motion to dismiss. *Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012). Federal courts are courts of limited jurisdiction; the plaintiff carries the burden of demonstrating that either the Constitution or a statute has granted the court jurisdiction over a given suit, and that it may therefore hear it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The United States has sovereign immunity and cannot be sued unless it expressly consents. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

Plaintiffs named Nancy Berryhill, in her official capacity as Commissioner of Social Security, and the United States as defendants.[4] In order to proceed in federal district court,

---

[4]As Defendants noted before the district court, the only proper defendant in an FTCA claim is the United States. 28 U.S.C. § 2679(a); 28 U.S.C. § 1346(b); *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990).

claims against these defendants must both have a jurisdictional basis and clear the sovereign immunity hurdle. Plaintiffs sue under the FTCA, alleging that Defendants committed torts by not initiating the redetermination process "immediately" after suspecting fraud, failing to conduct "individual assessments" of beneficiaries before informing them of the need for redeterminations, suspending benefits prior to the redeterminations, and giving beneficiaries a ten-day window to collect new evidence.[5]

In turn, Defendants argue that the district court lacked jurisdiction over Plaintiffs' claims for two independent reasons. First, they argue that the FTCA's discretionary function exception bars Plaintiffs' claims. Second, they argue that 42 U.S.C. § 405(h) precludes the district court from exercising federal question jurisdiction over these claims because they arise under the Act. We agree with Defendants that the discretionary function exception bars Plaintiffs' FTCA claim and therefore need not analyze 42 U.S.C. § 405(h)'s implications in this case.

As a preliminary matter, much of Plaintiffs' briefing asserts that the SSA's handling of the Conn fraud fallout amounted to "affirmative misconduct." Plaintiffs borrow this language from *Schweiker v. Hansen*, 450 U.S. 785 (1981), and argue that such a categorization should impact our analysis. However, *Hansen* and its "affirmative misconduct" language are entirely inapposite. *Hansen* considered whether the government could be estopped from denying retroactive benefits due to misleading statements made by a SSA field representative. *Id*. at 788. The Supreme Court determined that the SSA was not estopped from denying the claimant retroactive benefits and reserved the question of how an instance of affirmative misconduct on

---

Therefore, because the FTCA claim is the only claim that Plaintiffs pursued on appeal, Berryhill is an improper defendant. However, because we find subject matter jurisdiction lacking, we need not discuss the implications of Berryhill's continued presence as a named defendant.

[5]Although the First Amended Complaint alleges that the SSA violated statutory obligations, it frames those alleged violations in the context of a tort claim only. Plaintiffs argue that the alleged statutory violations are evidence of "affirmative misconduct," which they argue should force our analysis outside of the discretionary function exception framework. For the reasons discussed below, Plaintiffs' allegation of "affirmative misconduct" is inconsequential here. Plaintiffs' appellate briefing similarly raises the alleged statutory violations only in the context of developing their FTCA claim. *See* Reply Br. of Appellants at 8 ("Appellants…do not seek to recover under the Social Security Act. Plaintiffs [sic] theories for damages are not based on the Social Security Act, and nothing in the Social Security Act is cited as the basis for the Plaintiffs [sic] recovery of damages."). Because Plaintiffs have alleged the statutory violations only in the context of their FTCA claim, we need not address whether the district court would have jurisdiction over claims arising from any hypothetical stand-alone statutory violations by the SSA.

the part of the field representative would have factored into the analysis. *Id*. at 788–89. Therefore Plaintiffs' allegation of "affirmative misconduct" does not affect our analysis here.

The district court found that it lacked jurisdiction over Plaintiff's tort claims because they fell within the discretionary function exception to the FTCA. *See* 28 U.S.C. § 2680(a). The Sixth Circuit reviews "de novo the district court's dismissal based on the discretionary function exception to the FTCA." *A.O. Smith Corp. v. United States*, 774 F.3d 359, 364 (6th Cir. 2014).

The United States has consented to be sued for conduct covered by the FTCA, waiving sovereign immunity where it applies. The FTCA grants the district courts

> exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). State tort law provides the substance of a claim that gains its jurisdictional basis through the FTCA. *Meyer*, 510 U.S. at 478.

The substance of cognizable FTCA claims, however, is further limited. FTCA actions are not available for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This "discretionary function exception" serves to "mark[ ] the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

The discretionary function exception applies when two conditions are present. *United States v. Gaubert*, 499 U.S. 315, 322–325 (1991). First, the agency's action must include "an element of judgment or choice," and cannot be dictated by authority that gives "the employee [ ] no rightful option but to adhere to the directive." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Second, the governmental decision must be "the kind that the discretionary function

exception was designed to shield." *Id.* This means that it must be "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. If the court concludes that the employee was exercising discretion in acting (if the first condition is met), then there arises a "strong presumption" that the second condition is met as well. *Id.* at 324.

In *A.O. Smith Corp.*, we determined that the Army Corps of Engineers' ("Corps") decisions concerning the management of the Old Hickory Dam's water levels during a serious rainstorm were discretionary. 774 F.3d at 366. The relevant manuals provided that releasing water from the reservoir prior to the onset of a serious storm "[was] permitted" and "should be" done in some situations. *Id.* at 365. The language left room for the Corps to exercise discretion in its preparation for flooding. *Id.* The requirement that the Corps coordinate with operators of other dams to ensure that the dams collectively did not release too much water provided further evidence of discretion because the additional moving pieces necessitated the use of choice and judgment. *Id.* The Corps was required to "consider a plethora of factors prior to initiating [pre-flood drawdowns]," and therefore must manage competing "demands" in a way that required "some degree of operational flexibility." *Id.*

In *Myers v. United States*, we held that the conduct of inspectors from the Mine Safety and Health Administration involved discretion because their instructions followed an "'if/then' logical structure" that required the inspectors to make particular preliminary assessments involving judgment or choice prior to acting. 17 F.3d 890, 895 (6th Cir. 1994). The decision whether the "predicate condition exists" involved sufficient discretion to satisfy the first prong of the *Gaubert* test even though the outcome of the preliminary assessment mandated specific corresponding next steps. *Id.*

In assessing whether the second *Gaubert* criterion is satisfied, we look to whether the decision-making surrounding the conduct was "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. Such "social, economic, or political" policy analysis need not have actually occurred in the disputed instance, but rather the decision need only have been theoretically susceptible to policy analysis. *A.O. Smith Corp.*, 774 F.3d at 370; *Myers*, 17 F.3d at 895. "[B]udgetary considerations" and "effectiveness inquiries" may factor into such policy analysis.

*A.O. Smith Corp.*, 774 F.3d at 370 (citing *Graves v. United States*, 872 F.2d 133, 137 (6th Cir. 1989); *Reetz v. United States*, 224 F.3d 794, 797 (6th Cir. 2000)).

The district court correctly determined that it lacked jurisdiction over Plaintiffs' claims because the SSA's conduct involved choice and was susceptible to policy analysis. The Social Security Act gives some direction to the SSA as to how to handle instances where a suspicion of fraud arises. 42 U.S.C. § 1320a-8(l) provides: "As soon as the Inspector General, Social Security Administration, has reason to believe that fraud was involved in the application of an individual for monthly insurance benefits . . . , the Inspector General shall make available to the Commissioner of Social Security information identifying the individual," unless the appropriate authorities inform him that doing so would jeopardize a criminal investigation. Additionally, 42 U.S.C. § 405(u)(1)(A) provides:

> The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud.

Finally, the Hearings, Appeals and Litigation Law Manual (HALLEX), a non-statutory SSA internal manual published by the Deputy Commissioner for Disability Adjudication and Review, also provides slightly more specific instruction on handling redeterminations necessitated by suspected fraud. HALLEX I-1-3-25, Processing Cases Under Sections 205(u) and 1631(e)(7) of the Social Security Act (Fraud or Similar Fault "Redeterminations"), https://www.ssa.gov/OP_Home/hallex/I-01/I-1-3-25.html; *Carter v. Colvin*, 220 F. Supp. 3d 789, 796 (E.D. Ky. 2016).

*Gaubert*'s first criterion is satisfied because the SSA's handling of the situation was "discretionary" and not "controlled by mandatory statutes or regulations." *Gaubert*, 499 U.S. at 328. The SSA's actions included a significant "element of judgment or choice." *Id*. at 329. Plaintiffs have pointed to no SSA regulations that fix an exact period after suspicion of fraud

during which recipients of disability benefits must be notified and redeterminations made, prevent the termination of disability benefits prior to redetermination when there is a suspicion of fraud, or mandate a certain period of time that beneficiaries must be given to collect new evidence to be used in the redeterminations.  The SSA may exercise choice and judgment in fashioning a response that it deems appropriate.

Plaintiffs argue that the SSA did not have discretion to act because of the presence of the words "shall immediately" in 42 U.S.C. § 405(u)(1)(A).  They argue that "shall immediately" should be read literally because any allowance of lag-time between the suspicion of fraud and redetermination reads the word "immediately" out of the statute, and "shall" demands mandatory rather than permissive action.  In its order, the district court reasonably observed, however, that "plaintiffs miss that there is an element of discretion baked into even this requirement."  R. 37 (May 26, 2017 Dist. Ct. Order at 5) (Page ID #327).  The term "immediately" simply cannot be read literally in a situation as factually complex as this.  As in *Myers*, the SSA's directive here involved an "if/then" analytical process.  17 F.3d at 895.  The Commissioner was to conduct immediate redeterminations only if the SSA had reason to believe "that fraud or similar fault was involved in the application" or if the Inspector General informed her of such reason.  42 U.S.C. § 405(u)(1)(A).  The predicate determination that in fact there was reason to believe that there had been fraud itself involves "choice or judgment."  The official must determine the appropriate threshold level of suspicion prior to beginning the redeterminations process.   In criminal investigations, evidence often gradually develops and suspicion grows, not always in a linear fashion.  If the Commissioner were to redetermine benefits every time there was a faint suspicion of fraud, redeterminations might be untenably frequent and often unnecessary.  As in *A.O. Smith*, Defendants here had to balance a "plethora of factors" in a situation that required "some degree of operational flexibility."  *A.O. Smith Corp.*, 774 F.3d at 365.

Plaintiffs also assert that the SSA did not have discretion to violate its regulatory "mandate [to] do an individual assessment of each individual."[6]  R. 27 (First Am. Compl. at 6) (Page ID #259).  Plaintiffs seem to argue that the SSA was negligent and violated its own

---

[6]Plaintiffs cite "sections 205(u) and 1631(e)(7) of the Social Security Act" as mandating an "individualized assessment."  Corrected Br. of Appellants at 5 n.4.  Neither provision uses such language.

regulations by failing to assess individually the vulnerabilities of the affected beneficiaries to determine whether sending the letter was likely to set them down a suicidal path. *See* Corrected Br. of Appellants at 6 ("In fact[,] has [sic] an individual assessment of the Jude and Burchett files been done, as is required by SSA regulations, it would have been noted that benefits for these two were primarily or totally founded upon mental illness."). Plaintiffs exaggerate the protections that the Act and HALLEX's individual screening provision actually extend. HALLEX's individual screening provision required only that the SSA check to see that fraud sufficiently undermined each of the affected beneficiaries' prior benefit determinations before notifying them. 42 U.S.C. § 405(u); HALLEX I-1-3-25(C). Plaintiffs do not specifically allege that the SSA failed to complete this mandated process.[7] Any additional "individualized assessment" of how the redetermination notification would impact particularly vulnerable beneficiaries was not mandated. Therefore the decision not to conduct such an assessment also depended on the choice and judgment of the SSA.

The second *Gaubert* criterion is also satisfied because the SSA's decisions about the appropriate procedure for handling the redetermination process were susceptible to policy analysis. *Gaubert*, 499 U.S. at 325. In deciding when to initiate redeterminations, the SSA had to consider the strength of the available evidence of fraud and the likelihood of further evidence emerging, and evaluate the priority of the Conn fraud in light of its limited resources and other responsibilities. The decisions to suspend benefits prior to the redetermination hearings and define the window for beneficiaries to gather new evidence were equally susceptible to the social, economic, and political policy analysis required by *Gaubert*'s second step. The SSA had to consider the benefits of a speedy redetermination process as well as fairness concerns such as giving the beneficiaries sufficient time to gather new evidence. It had to balance fiscal concerns urging that it cease paying benefits to unqualified individuals against the likelihood that it would suspend the benefits of those who truly qualified for them. Regrettably, the SSA's chosen response to the Conn wreckage left many particularly vulnerable individuals in an unexpected

---

[7]Plaintiffs allege that Defendants violated this mandate by sending out "the same form suspension letter notifying [approximately 900 individuals that] their benefits were suspended." R. 27 (First Am. Compl. at 6) (Page ID #259). However, use of a form letter says nothing about the SSA's preliminary analysis of which beneficiaries should receive that letter.

and deeply frightening position. Yet because the FTCA's discretionary function exception applies in this instance, the courts are not an available venue for those affected by this truly tragic situation to seek this type of redress.

## III. CONCLUSION

We agree with the district court that the discretionary function exception covers the challenged conduct and therefore **AFFIRM** the dismissal.